THE PHILADELPHIA AND WILMINGTON RAILROAD COMPANY, PLAINTIFF IN ERROR, v. THE STATE OF MARYLAND.

The Philadelphia, Wilmington, and Baltimore Railroad Company was formed by the union of several railroad companies which had been previously chartered by Maryland, Delaware, and Pennsylvania, two of which were the Baltimore and Port Deposit Railroad Company, whose road extended from Baltimore to the Susquehanna, lying altogether on the west side of the river, and the Delaware and Maryland Railroad Company, whose road extended from the Delaware line to the Susquehanna, and lying on the east side of the river.

The charter of the Baltimore and Port Deposit Railroad Company contained no exemption from taxation.

Philadelphia and Wilmington Railroad Co. *v.* Maryland.

The charter of the Delaware and Maryland Railroad Company made the shares of stock therein personal estate, and exempted them from any tax "except upon that portion of the permanent and fixed works which might be in the State of Maryland."

Held, that under the Maryland law of 1841, imposing a tax for State purposes upon the real and personal property in the State, that part of the road of the plaintiff which belonged originally to the Baltimore and Port Deposit Railroad Company, was liable to be assessed in the hands of the company with which it became consolidated, just as it would have been in the hands of the original company.

Also, that there is no reason why the property of a corporation should be presumed to be exempted from its share of necessary public burdens, there being no express exemption.

This court holds, as it has on several other occasions held, that the taxing power of a State should never be presumed to be relinquished, unless the intention is declared in clear and unambiguous terms.

ERROR to the Court of Appeals for the Western Shore of Maryland.

This was an action of *indebitatus assumpsit*, brought by the defendant in error, in the Baltimore County Court, to recover certain State taxes assessed upon the real and personal property of the plaintiff in error, being in Harford County in the State of Maryland.

The suit was docketed by consent, with an agreement that a judgment *pro forma* should be entered for the plaintiff, now defendant in error, upon a statement of facts. An appeal was taken from this judgment to the Court of Appeals, where it was affirmed *pro forma*, and the present writ of error was afterwards sued out. The statement of facts was as follows.

"The Philadelphia, Wilmington, and Baltimore Railroad Company" was formed by an agreement of union, duly made and entered into between the following corporations, to wit, the Baltimore and Port Deposit Railroad Company, the Wilmington and Susquehanna Railroad Company, and "the Philadelphia, Wilmington, and Baltimore Railroad Company," of Pennsylvania. This agreement of union was made on the day of its date, under the authority claimed under and in pursuance of the directions of the several acts of assembly therein recited, and was entered into after the primary meetings of stockholders, as required by said several acts. A copy of said agreement is herewith produced as a part of this statement, marked exhibit A. "The Baltimore and Port Deposit Railroad Company" was incorporated by the act of 1831, chap. 288, of the General Assembly of Maryland; "the Wilmington and Susquehanna Railroad Company" (one of the parties to said agreement marked exhibit A) was formed by an agreement of union duly made and entered into on the 18th day of April, 1835, between the Delaware and Maryland Railroad Company and the Wilmington and Susquehanna Railroad Company (of Delaware), in virtue and in strict pursuance of the several

32*

acts in said agreement of union recited, to wit, an act of the General Assembly of the State of Delaware, passed on the 24th day of July, 1835, and an act of the General Assembly of the State of Maryland, passed at December session, 1835, chap. 93, and was certified and recorded as directed by said several acts. The said corporation, "the Delaware and Maryland Railroad Company," was incorporated by the act of 1831, chap. 296, of the General Assembly of Maryland; "the Wilmington and Susquehanna Railroad Company" (of Delaware) was incorporated by an act of the General Assembly of the State of Delaware, passed on the 18th day of January, 1832; "the Philadelphia, Wilmington, and Baltimore Railroad Company" (of Pennsylvania) was originally chartered by an act of the General Assembly of the Commonwealth of Pennsylvania, approved on the 2d day of April, 1831, by the name of the "Philadelphia and Delaware County Railroad Company," which, by a supplement to said act, passed the 14th day of March, 1836, was changed to the corporate name of the Philadelphia, Wilmington, and Baltimore Railroad Company. The agreement of union by which the "Philadelphia, Wilmington, and Baltimore Railroad Company," the party to this suit, was formed, (of which said exhibit A is a copy,) was made by authority and in pursuance of the act of the General Assembly of Maryland, passed at December session, 1837, chap. 30, and other corresponding acts of the General Assembly of the State of Delaware and the Commonwealth of Pennsylvania, recited in said agreement of union, marked exhibit A. All which said acts of assembly of the States of Maryland, Delaware, and Pennsylvania, above referred to, or referred to in said exhibit A, relating to the incorporation and charter of the defendant, are to be regarded as part of this statement, and, to save the trouble of transcribing them, either party may read them from the printed statutes; to have the same effect as if they were transcribed into this statement, or regularly certified copies of the same filed herewith.

The railroad of the defendant extends from the city of Baltimore, in Maryland, to the city of Philadelphia, in Pennsylvania, passing through the counties of Baltimore, Harford, and Cecil, in Maryland, and thence over a part of the States of Delaware and Pennsylvania. That portion of said railroad which lies we' of the Susquehanna River, that is to say, between the city of Baltimore and the said river, lying partly in Baltimore County and partly in Harford County, was made and constructed (prior to the agreement of union of which exhibit A is a copy), and owned in severalty by "the Baltimore and Port Deposit Railroad Company." That portion of said rail-

road which lies east of the Susquehanna, and between that river and the divisional line between the States of Delaware and Pennsylvania, was made by the Wilmington and Susquehanna Railroad Company, and (prior to the said agreement of union, of which exhibit A is a copy) was owned in severalty by said last-mentioned company. Previous to the consolidation of "the Delaware and Maryland Railroad Company" and "the Wilmington and Susquehanna Railroad Company" (of Delaware) into one company, the line of the road which the said corporation, "the Delaware and Maryland Railroad Company," was authorized to make, was that part of said road which lay east of the Susquehanna, and between that river and the divisional line between the States of Maryland and Delaware, and that part of said road which the said corporation, "the Wilmington and Susquehanna Railroad Company" (of Delaware), was authorized to make, is that part of said road which lies between the divisional lines of the States of Maryland and Delaware and the Commonwealth of Pennsylvania; each of said last-mentioned corporations, prior to the consolidation, had commenced the location and construction of their said several parts; but at the time of their consolidation under their agreement of union aforesaid, neither part was completed, but the whole was completed by the Wilmington and Susquehanna Railroad Company, after their agreement of union aforesaid. The River Susquehanna is passed over by the use of a steamboat belonging to the defendant, the said Philadelphia, Wilmington, and Baltimore Railroad Company, and used by said defendant for the sole and exclusive purpose of transporting persons and property across said river, from shore to shore, from the terminus of the railroad track on the other shore; said steamboat is especially constructed for its use in connection with said railroad, and has rails laid on its upper deck which are so constructed that the said rails are placed in juxtaposition with the railroad track of the railroad when the boat is in place for use, in connection with the terminus of the road on either shore; cars are received upon the said deck of said steamboat from the railroad track on one shore, and passed over the river by the said steamboat, and on to the railroad track on the other shore from off said boat, as the means of passing cars, &c., across the river; and prior to the agreement of union, of which exhibit A is a copy, was owned jointly, but in unequal parts, by the Baltimore and Port Deposit Railroad Company and the Wilmington and Susquehanna Railroad Company, and was managed and kept in repair at the joint expense, in the proportion of their respective interest therein, by the said last-mentioned two companies.

The said steamboat, before and since the said agreement of union of which exhibit A is a copy, usually remained, and still usually remains, in a dock constructed in the Susquehanna River by protecting piers projecting from the Harford shore, when not actually in use; which dock is on the west shore of the Susquehanna River, and within the limits of Harford County. That part of said road which lies east of the divisional line between the States of Delaware and Pennsylvania, and thence extending to the city of Philadelphia, was, prior to the said agreement of union of which exhibit A is a copy, constructed and owned in severalty by the said corporation, called the Philadelphia, Wilmington, and Baltimore Railroad Company (of Pennsylvania). The principal office of the defendant, (ever since the agreement of union of which exhibit A is a copy,) for the transaction of the business of said company, has been established and held in the city of Philadelphia, at the eastern terminus of said railro

The stated meetings of the board of directors, by the terms of said agreement of union, are to be held alternately at Wilmington and Philadelphia. There are offices at Philadelphia, Wilmington, and Baltimore, at any one of which transfers of stock may be made; the stated meetings of the stockholders were to be held in the city of Wilmington. Prior to said agreement of union, the principal office of the Baltimore and Port Deposit Railroad Company was held in the city of Baltimore, and the principal office of the defendant within the State of Maryland has been, and is now, in said city, at which place one of the vice-presidents of the said corporation resides. All the corporate funds and capital stock of said defendant have been expended and contained in the location and construction of said road, and in the construction of such works and improvements as were necessary and expedient to the proper completion and use of said road, and in the purchase of cars and machinery of transportation, &c., necessary and indispensable to the completion and use of said road; and the said company has not, at any time, since the said agreement of union, owned or held, and does not now own or hold, any estate, real, personal, or mixed, other than what forms a part of, or necessarily appertains to, the construction and completion of said road, and its works and improvements, and in the purchase of cars and machinery of transportation, &c., necessary and indispensable to its use; and over and beyond its actual capital, it was found necessary to raise by loan a large additional amount for the purposes aforesaid, and which amount has been so applied. The defendant was assessed, under the act of the General Assembly of Maryland of March session, 1841, chap.

Philadelphia and Wilmington Railroad Co. v. Maryland.

23, by the assessors, appointed under said act, for Harford County, with the sum of $ 127,000, as shown by a copy of said valuation and assessment, filed herewith as a part of this statement, marked exhibit B. The several parcels or tracts of land, valued for 200 acres at $ 10 per acre, as held and occupied by said company from the Gunpowder Falls to the Susquehanna River, lie within the limits of Harford County, and consist of the land held and occupied by said company for the bed of its railroad, water stations, depots, and ticket-offices of said company; portions of which said land were acquired under condemnations for the use of said company, under the provisions of the said act of the General Assembly of Maryland, of December session, 1831, chap. 233, and other portions of which were acquired by agreement with the owners thereof. The title acquired in each case of agreement with the owner being consummated by deed of bargain and sale to the president and directors of said company an heir successors, in the ordinary terms of a conveyance in fee. The houses and other improvements on the road, and at Havre de Grace, and the depots, ticket-offices, and water stations of said company, lie within the limits of Harford County. The railroad track iron, within the limits of Harford County, valued at $ 95,000, consists of the rails actually laid down and in use as the track of said railroad within the limit aforesaid. And the steam ferry-boat at Havre de Grace, valued at $ 15,000, is the steamboat hereinbefore mentioned, used as aforesaid for the sole and exclusive purpose of transporting persons and property across the River Susquehanna, from the terminus of the railroad track on one shore to the terminus of the railroad track on the other shore, in the manner hereinbefore mentioned; said steamboat is, and continually since its use as aforesaid has been, duly enrolled and licensed at the custom-house in Baltimore, according to the act of Congress. The capital stock of the defendant, under the agreement of union, (of which exhibit A is a copy,) is divided into 45,000 shares of $ 50 each, which stock is held by various persons, many of whom reside in the State of Maryland, and others of whom, and a large majority of whom, reside in other States, and in Europe, and was so held at the time of said union. The stockholders residing in the city of Baltimore, in Maryland, had actually been assessed to the extent of the stock by them respectively held, no objection being taken to said assessment, nor any appeal prosecuted therefrom; no assessment has been made on the stock of any of the stockholders residing in Harford County, or Cecil County, if any reside there, nor on the stock of non-resident stockholders. It is further admitted, that the taxes assessed and levied upon the

said property of the said defendant were for State purposes for the years 1842, 1843, 1844, and 1845; and that the same were assessed and levied by the commissioners of Harford County, under the act of the General Assembly of the State of Maryland, passed at March session, 1841, chap. 23, and that the said paper, marked exhibit B, filed as a part of this statement, is a correct statement of the rate and amount of taxes so assessed and levied, and that said rate of taxation is the same as that imposed for said years upon all real and personal property (not expressly exempted by said act of assembly) in said State. It is further agreed, that if the court shall be of opinion, on the aforegoing statement, that the said property of said defendant is liable to be assessed for taxes for general State purposes, under the act of assembly aforesaid, that then judgment be rendered for the plaintiff for $ 1,455.19 and costs; but if the court shall be of opinion that the said property of the said defendant is not liable to be assessed and taxed as aforesaid, but the same is exempt from such assessment and taxation under the charter of the defendant, or the said act of the General Assembly of Maryland of March session, 1841, chap. 23, then judgment to be given for defendant.

GEO. R. RICHARDSON, *Attorney for Plaintiff.*
REVERDY JOHNSON, *for Defendant.*

Exhibit A, referred to in the aforegoing statement, is as follows, to wit: —

" Agreement between the Wilmington and Susquehanna Railroad Company, the Baltimore and Port Deposit Railroad Company, and the Philadelphia Wilmington, and Baltimore Railroad Company.

" Copy. — Articles of union made and concluded this 5th day of February, in the year of our Lord 1838, between the Wilmington and Susquehanna Railroad Company, the Baltimore and Port Deposit Railroad Company, and the Philadelphia, Wilmington, and Baltimore Railroad Company, by virtue and in pursuance of an act of the General Assembly of the State of Delaware, entitled ' A further supplement to an Act entitled an Act to incorporate the Wilmington and Susquehanna Railroad Company,' and of an act of the General Assembly of Maryland, entitled ' An Act to authorize the union of the Baltimore and Port Deposit Railroad Company, the Wilmington and Susquehanna Railroad Company, and the Philadelphia, Wilmington, and Baltimore Railroad Company,' and of an act of the General Assembly of Pennsylvania, entitled 'An Act supplementary to the Act incorporating the Philadelphia, Wilmington, and Baltimore Railroad Company.'

" First. The said three corporations are hereby united, and from and after the first election of directors hereinafter provided for in the third article shall be merged into one body corporate, under the name and style of the Philadelphia, Wilmington, and Baltimore Railroad Company, and the stocks of the said three corporations so united shall form one common stock, and all the estate, real, personal, and mixed, and the rights, privileges, advantages, and immunities belonging to each of the said corporations, become and. be vested in the said body corporate, and the debts and liabilities of each of the said corporations shall be deemed, and are hereby declared to be, the debts and liabilities of the said body corporate.

" Second. The stock of the said body corporate is hereby divided into shares of fifty dollars each, of which the present stockholders of the Wilmington and Susquehanna Railroad Company are hereby declared to be entitled, in all, to sixteen thousand shares, the present stockholders of the Baltimore and Port Deposit Railroad Company to nineteen thousand shares, the present stockholders of the Philadelphia, Wilmington, and Baltimore Railroad Company to ten thousand shares, including those forfeited heretofore, which are to be held for the use of this corporation; and certificates of stock, as may be regulated by the president and directors of the said body corporate, shall be granted and issued accordingly to each of the said stockholders so soon as the said stockholders shall have paid up all instalments due upon the shares of·stock held by them respectively, and shall have surrendered the certificates previously issued to them as stockholders in the respective companies hereby united; and the capital stock of the said corporation shall consist of such number of shares as aforesaid, subject to the right and privilege of increasing the same from·time to time, according to the. provisions of the respective charters of the said companies hereby united.

" Third. There shall be fifteen directors to manage the affairs and business of the said body corporate, and a meeting of the stockholders of the three corporations hereby united for the election of the first directors shall be held at Wilmington on Wednesday, the 14th day of February, instant, of the time and place of which meeting notice shall be given by the present president of the Wilmington and Susquehanna Railroad Company by advertisement in at least three newspapers, at which meeting fifteen directors shall be elected by the.said stockholders, voting in person or by proxy, and each share being entitled to one vote; and the directors so elected shall hold their offices until the ensuing annual meeting of the stockholders, and until their successors are elected.

" Fourth. The stated meetings of the stockholders shall be held in the city of Wilmington, on the second Monday of January in each and every year hereafter, at which time and place an annual election of directors shall be made by the stockholders, and fifteen days' notice of the time and place of each stated meeting shall be given by advertisement in at least three newspapers; the election shall be by ballot, and each share of the stock shall entitle the holder thereof to one vote, to be given either in person or by proxy, provided it has been held for three calendar months before the time of voting; the directors shall, after the first and each subsequent election, choose by ballot one of their own number to be president of the said body corporate, who shall serve one year, or until the election of a successor; the omission to hold an election for directors at the time prescribed shall in no wise affect the said body corporate, but such election may be had upon due notice from the said president and directors, published as aforesaid, at any time within three months after the time so prescribed as aforesaid.

" The directors shall hold their offices for one year, and until a new election shall take place, and the powers of the said president and directors shall be the same as are now vested in the president and directors of the Wilmington and Susquehanna Railroad Company; the president may be removed from his office by a vote of two thirds of all the directors. The directors may, in each year that they may deem it advisable, elect a vice-president from their own number, who, in the absence of the president, shall have all the powers of the president, and shall be liable to removal in like manner as the president. Five directors shall constitute a quorum for the transaction of business. The directors may, if they shall deem it advisable, appoint an executive committee, consisting of six members, from the States of Pennsylvania, Delaware, and Maryland, for such time, and for the performance of such duties, as any resolutions of the directors, or any by-law, may prescribe and assign; and the president, or vice-president, and any two members of said committee, shall constitute a quorum thereof. All officers and agents of the corporation, other than directors, shall be appointed by the directors, who may prescribe and exact such security as they may deem proper for the performance of their duties.

" Fifth. The stated meetings of the board of directors shall be held alternately at Wilmington and Philadelphia, and special meetings may be held either at Wilmington, Philadelphia, or Baltimore. The corporation shall have offices opened at Wilmington, Philadelphia, and Baltimore, at either of which trans-

fers of stock may be made, under such regulations as the board of directors may prescribe.

" Sixth. All by-laws shall be made, altered, or repealed only by a majority, consisting of not less than two thirds of all the directors; it being understood that no by-law shall contravene any of these terms or stipulations; and the existing by-laws of the Wilmington and Susquehanna Railroad Company shall, until altered or repealed as aforesaid, be the by-laws of this corporation; and all rules and regulations necessary for the management and conduct of the business of the company, not provided for in a by-law, may be made by the directors.

" In witness whereof, the said corporations, parties to this agreement, have caused their respective corporate seals, attested by the signatures of their respective presidents, to be hereunto affixed, the day and year first herein before written.

JAMES PRICE, [L. S.]
*Pres. Wilm. and Susq'a Railroad Co.*
J. I. COHEN, JR., [L. S.]
*Pres. Balto. and Port Deposit Railroad Co.*
M. NEWKIRK, [L. S.]
*Pres. Philad., Wilm., and Balto. Railroad Co.*

" In pursuance of the provisions of an act of the General Assembly of Maryland, entitled ' An Act to authorize the union of the Baltimore and Port Deposit Railroad Company, the Wilmington and Susquehanna Railroad Company, and the Philadelphia, Wilmington, and Baltimore Railroad Company,' said corporations do hereby certify, under their respective corporate seals, attested by their respective presidents, that the within and foregoing instrument of writing is a true copy of an agreement for the union of the said company, made and concluded on the 5th day of February, A. D. 1838.

JAMES PRICE, [L. S.]
*Pres. Wilm. and Susq'a Railroad Co.*
J. I. COHEN, JR., [L. S.]
*Pres. Balto. and Po t Deposit Railroad Co.*
M. I EWKIRK, [L. S.]
*Pres. Philad., Wilm., ( nd Balto. Railroad Co.*

" Received to be recorded the 12th day of February, 1838, at 5 o'clock, P. M.; same day recorded and examined.

Per THOMAS KELL, *Clerk.*

" In testimony that the aforegoing is a true copy, taken from liber T K, No. 276 folio 392, &c., one of the land records [L. S.] of Baltimore County, I hereto subscribe my name and affix the seal of Baltimore County Court, this 3d day of December, 1846.

A. W. BRADFORD, *Clerk of Balto. Co. Court.*"

Exhibit B, referred to in said statement, is as follows, to wit: —

" A list of the real and personal property of the Philadelphia, Wilmington, and Baltimore Railroad Company, as per the assessors' books on file in the office of the Commissioners of Harford County, on which taxes are due for the years of 1842, 1843, 1844, and 1845, to wit: —

| | |
|---|---:|
| Different tracts of land, from the Gunpowder Falls to the Susquehanna, containing 200 acres, at $ 10 per acre, | $ 2,000 |
| Track iron, &c., &c., | 95,000 |
| Houses and other improvements on the road, and at Havre de Grace, | 15,000 |
| Steamboat at Havre de Grace, | 15,000 |
| | $ 127,000 |

" I hereby certify, that the above is a true transcript of the property of the Railroad Company from the assessors' books.
" Given under my hand and seal of the Commissioners of Harford County, this

| | | |
|---|---|---:|
| 1842. | To State tax on $127,000, at 25 cents per $100, | $ 317.50 |
| | Commission at 1½, | 19.05 |
| | Interest for three years, | 60.57 |
| 1843. | To State tax on the same, at 25 cents per $100, | 317.50 |
| | Commission at 1¾, | 22.22 |
| | Interest for two years, | 40.75 |
| 1844. | To State tax on the above, 25 cents per $100, | 317.50 |
| | Commission at 1¾, | 22.22 |
| | Interest for one year, | 20.38 |
| 1845. | State tax on the above, 25 cents in $100, | 317.50 |
| | | $ 1,455.19 |

" James Spicer, *Collector*."

It is agreed that any errors in the foregoing statement may be corrected by counsel, at the trial of the cause, either in the County Court, Court of Appeals, or Supreme Court of the United States; and that said statement may be added to or amended, by agreement, at any time.

George R. Richardson, *Attorney for Plaintiff*.
Reverdy Johnson, *for Defendant*.

The following is a summary of the act imposing the tax, as

well as of the acts incorporating the different companies, so far as they bear upon the question before the court.

The first section of the act of 1st April, 1841, imposing the tax sought to be recovered, after enumerating the several kinds of property which are to be the subject of taxation, including "all stocks or shares, owned by residents of this State, in any bank, institution, or company incorporated in any other State or Territory," also "all stocks or shares in any bank, institution, or company incorporated by this State," declares that such "and all other property of every description whatsoever shall be valued agreeably to the directions of this act, and shall be chargeable according to such valuation with the public assessment: provided," &c.

The ninth section makes it the duty of the assessor to inform himself of all property liable to assessment, and to make a return thereof under prescribed heads, the fifth of which was, "Bank stocks and other stocks particularly specified, with their respective values."

The sixteenth section provided, that, for the valuing of stock in private corporations held by non-residents, the locality of such stock should be deemed to be at the place where the principal place of business of such corporation should be situate.

The seventeenth section enacted that the president or proper officers of corporations should make out and deliver to the assessors of the proper county an account of stock in such corporation.

The forty-fifth section made it the duty of the levy court or commissioners of the several counties to impose a tax of twenty cents in every $100 of assessable property, according to their valuation.

The fifty-third section provided that the tax imposed "shall be collectable and payable into the State treasury according to the provisions of this act, an be in all respects subject thereto."

The second section of the act of 1831, ch. 288, entitled "An Act to incorporate the Baltimore and Port Deposit Railroad Company," enacted that "the subscribers of the said stock, their successors and assigns, shall be, and they are hereby declared to be, incorporated into a company, by the name of the Baltimore and Port Deposit Railroad Company, and by that name shall be capable in law of purchasing, holding, selling, leasing, and conveying estates, real, personal, and mixed, so far as shall be necessary for the purposes hereinafter mentioned, and no further, and shall have perpetual succession, and by said corporate name may sue and be sued."

The twelfth section gave authority to construct a road one hundred feet wide ɩfrom the City of Baltimore to Port Deposit, &c.

The twentieth section declared that "the shares of the capital stock of said company shall be deemed and considered personal estate."

The act of 1831, ch. 296, entitled "An Act to incorporate the Delaware and Maryland Railroad Company," gave a perpetual charter, and authorized the construction of a road one hundred feet wide "from some point on the Delaware and Maryland line" "to Port Deposit, or any other point on the Susquehanna River."

The nineteenth section, after giving authority to purchase property, charge tolls, &c., and declaring that the property specified should be vested in said company and their successors for ever, proceeds: "And the shares of the capital stock of said company shall be deemed and considered personal estate, and shall be exempt from the imposition of any tax or burden by the State's assenting to this law, except upon that portion of the permanent and fixed works of said company which may lie within the State of Maryland; and that any tax which shall hereafter be levied upon said section shall not exceed the rate of any general tax which may at the same time be imposed upon similar real or personal property of this State for State purposes."

The act of 14th March, 1836, ratifies and adopts the act of the General Assembly of Delaware, passed 24th July, 1835, which provided for the union of the Wilmington and Susquehanna Railroad Company (incorporated by the General Assembly of Maryland) into one company, to be styled "the Wilmington and Susquehanna Railroad Company," and which also provided that "the holders of the stock of the said railroad companies, so united as aforesaid, shall hold, possess, and enjoy all the property, rights, and privileges, and exercise all the power granted to and vested in the said railroad companies, or either of them, by this or any other law or laws of this State, or of the State of Maryland."

The act of 1837, ch. 30, authorizes the union of the Baltimore and Port Deposit Railroad Company, and the Wilmington and Susquehanna Railroad Company, with the Philadelphia, Wilmington, and Baltimore Railroad Company, and provides that said "body corporate so formed shall be entitled within this State to all the powers and privileges and advantages now belonging to the two first above-named corporations."

The cause was argued by *Mr. Meredith*, for the defendant

in error, and submitted on printed points by *Mr. Reverdy John-son,* for the plaintiff in error.

*Mr. Meredith,* for defendant in error.

It will be contended by the defendants in error, —

1st. That the property assessed for the State taxes, for the recovery of which this suit was brought, was, at the time of said assessment, liable to State taxation. Laws of Maryland, March Session, 1841, ch. 23; McCulloch *v.* State of Maryland, 4 Wheaton, 436; Providence Bank *v.* Billings, 4 Peters, 563, 564; Passenger Cases, 7 Howard, 402; Nathan *v.* State of Louisiana, 8 Howard, 80; Battle *v.* Corporation of Mobile, 9 Alabama, 234; Howell *v.* State of Maryland, 3 Gill, 14.

2dly. That the property so assessed was not exempted from taxation by any contract or agreement binding on the State of Maryland. Laws of Maryland, 1831, ch. 288; 1831, ch. 296; 1835, ch. 93; 1837, ch. 30; Providence Bank *v.* Billings, 4 Peters, 514; Charles River Bridge *v.* Warren Bridge, 11 Peters, 420; McCulloch *v.* State of Maryland, 4 Wheaton, 436; Bulow *v.* City Council, 1 Nott & McCord, 527; Angel and Ames on Corporations, 435, 459, 462, 467, and cases referred to; Blatchford *v.* Mayor of Plymouth, 3 Bingham, N. C. 691; Dwarris on Statutes, 9 Law Library, 50 et seq.; Kirby *v.* Potter, 4 Vesey, 751; Wildman *v.* Wildman, 9 Vesey, 177; Rawlins *v.* Jennings, 13 Vesey, 45; Page *v.* Leapingwell, 18 Vesey, 467; Reed *v.* McGrew, 5 Hammond, 380; Pembroke *v.* Duxbury, 1 Pickering, 199.

There are several questions which might be raised in the court below, but which would not be properly raised here. The only question is that which gives this court jurisdiction.

The Baltimore and Port Deposit Railroad Company had granted to them a perpetual charter, without any *bonus* to the State. But the charter contained no exemption from State taxation.

The act of 1831, ch. 296, gave to the Delaware and Maryland Railroad Company a perpetual charter. The nineteenth section declares that the shares of the capital stock shall be considered personal estate. There is obscurity in this section. The object would seem to have been to convert the *shares* into personal estate in order to subject them to execution, Maryland not having passed any law till after this charter subjecting stocks, &c., to execution. The same section also declares, that such shares shall be exempt from the imposition of any tax, &c. It would seem from this that the legislature meant to exempt stock in the hands of the stockholders. Then comes the exception, that the legislature reserves the right to

33 *

tax the permanent and fixed works of the company, which would indicate that every thing else was exempted. And yet that would be a grant of an exemption by implication, there being no express words.

The plaintiffs claim an exemption which was not originally granted to them, but was granted to another company, which was subsequently merged in the present company. How was this exemption transferred?

The act of 1835, chap. 93, incorporates the legislation of Delaware on the same subject. That act *creates* a new corporation. In 1837, when the last union was asked for, Maryland provided that the three corporations should be merged in and form one body corporate, and that it should have all the powers, privileges, and advantages of the two former companies, namely, the Baltimore and Port Deposit Railroad Company, and the Wilmington and Susquehanna Railroad Company. Now the only exemption which could be transferred was that of the Delaware and Maryland Railroad Company, (because the other company had no exemption,) which had been merged in the Wilmington and Susquehanna Railroad Company. But the exemption of the former was gone necessarily, because it was only the *stock* of that company which was exempted. The moment, then, the stock was destroyed by the merger of that company in another, or the transfusion or intermingling of it with that of the other companies, its distinctive character was destroyed. Reed *v.* McGrew and Pembroke *v.* Duxbury are full to the point. And in the Charles River Bridge case this court held, that, by the charter to the Charles River Company, the franchise which had originally existed in Harvard College was extinguished. So here, by these new charters, the original exemption was extinguished.

But suppose it to have been transferred, how will it avail the present company? The property here assessed was not that which originally belonged to the Delaware and Maryland Company, but to the Baltimore and Port Deposit Company, which latter had, as I have shown, no exemption at all.

The only doubt is as to the steamboat. But it has been decided that a tax of this kind does not interfere with the regulations of commerce. It does not appear that this steamboat ever belonged to the exempted company. On the contrary, from the kinds of property authorized by the charter, it would seem otherwise. The charter was to construct a road from the divisional line *to the* Susquehanna River, and no farther. The property to be used was such as was required for this road, not for crossing the river. *Non constat*, then, that this steamboat ever belonged to the exempted company.

Philadelphia and Wilmington Railroad Co. *v.* Maryland.

*Mr. Johnson,* for the plaintiff in error.

The only question is, whether, by contract between the plaintiff in error and the State, the plaintiff was not exempt from the taxation, the amount of which it was the purpose of the suit to exact.    The judgment being against the plaintiff in error, who claimed the exemption under the alleged contract, and its protection under the Constitution of the United States, it must be reversed if their ground can be maintained.

First, Was there a contract, and second, Is it impaired by the tax in question ?

This is to be ascertained by referring to the several acts of Maryland, under which the plaintiff's franchise is held.    If these contain the contract relied upon, the point is made out. That a State may contract in the form of a legislative act, and so as to deprive herself in a particular instance of the right to exercise her taxing power, are not now open questions.    It is the settled doctrine.    Dartmouth College *v.* Woodward, 4 Wheaton, 518 ; New Jersey *v.* Wilson, 7 Cranch, 164.

Is there, then, such a contract in this case ?

Before the present company existed, the right to make the road from Baltimore to Philadelphia was in various companies, chartered for certain portions of the road, by Maryland, Delaware, and Pennsylvania.    These, by an agreement authorized by laws of the same States, were united into one on the 5th of February, 1838, under the name of the plaintiff in error ; the agreement is in the record.

By the terms of this association, and the several acts legalizing it, it will be seen that *all the privileges and exemptions* possessed by any one of the companies under its own charter became vested in the united body, and coextensive with the entire route of the road.

The act of Maryland of 1831, chap. 288, contains the exemption from taxation upon which reliance is placed.    The tax levied is not on the real or fixed property only, owned by plaintiff in error, and being within the limits of Harford County, but upon the iron rail, &c., and the steamboat at Havre de Grace.

The land is taxed, and also three other items ; this, it is submitted, is a clear violation of the exemption referred to.    That the exemption, but for its qualification in the section making it, would have embraced the entire property, real and personal, of the company, is perfectly clear.    The question then is, Was it the object of the qualification to take out of the exemption any thing else than the new land ?    It is submitted, that the rail-track, iron and wooden, and the steamboat, are the fixed property, within the meaning of the exemption.    To give it

that interpretation, would be to make the exemption annul the entire section, and render the exemption altogether nugatory.

Mr. Chief Justice TANEY delivered the opinion of the court.

The plaintiff in error is a corporation composed of several railroad companies which had been previously chartered by the States of Maryland, Delaware, and Pennsylvania; and which, by corresponding laws of the respective States, were united together, and form one corporation under the name and style of the Philadelphia, Wilmington, and Baltimore Railroad Company. The road of this corporation extends from Philadelphia to Baltimore.

One of the companies which now forms a part of this corporation was originally the Baltimore and Port Deposit Railroad Company, and was chartered by Maryland by an act passed in 1831, chap. 288. The road constructed by this company extended from Baltimore to the Susquehanna, lying altogether on the west side of the river.

The Delaware and Maryland Railroad Company was another of the original corporations, and was also chartered by Maryland by the act of 1831, chap. 296. It extended from the Delaware line to the Susquehanna, and lies on the east side of the river. This company was afterwards, by the act of 1835, chap. 93, and a corresponding law passed by the State of Delaware, united with the Wilmington and Susquehanna Railroad Company, which had been previously chartered by Delaware; the two companies when united taking the corporate name of the latter.

Afterwards, by an act of Assembly of Maryland, of 1837, chap. 30, and corresponding laws passed by Delaware and Pennsylvania, the last-mentioned company, together with the Baltimore and Port Deposit Railroad Company, was authorized to unite with the Philadelphia, Wilmington, and Baltimore Railroad Company, which had been previously chartered in the States where it was situated; and these united companies were incorporated into one, under the name and style of the last-mentioned company, and the corporation thus formed is the plaintiff in error.

In 1841, since the union of these companies, an act of Assembly of Maryland was passed, imposing a tax for State purposes upon the real and personal property in the State. Under this law, the portion of the road which belonged to the Baltimore and Port Deposit road, before the union last above mentioned, has been assessed as a part of the taxable property in the State, in the manner set forth in the schedule contained in the record. It is admitted that it has been assessed at the

same rate with that of individuals, and as prescribed by the law.

The question submitted to this court is, whether this property of the plaintiff in error is liable to be so taxed, under the grants contained in the different charters above referred to.

The charter of the Baltimore and Port Deposit Railroad declared that the property in this road when constructed should be vested in the company, and that the shares of the company should be deemed and considered as personal property. But there is no provision in the law exempting its stocks or its property, real or personal, from taxation. And certainly there is no reason why the property of a corporation should be presumed to be exempted, or should not bear its share of the necessary public burdens, as well as the property of individuals. This court on several occasions has held, that the taxing power of a State is never presumed to be relinquished, unless the intention to relinquish is declared in clear and unambiguous terms. In the act incorporating this company, there is nothing from which such an inference could possibly be drawn; and, standing upon this charter alone, the tax was without doubt lawfully imposed.

Neither can such an inference be drawn from any thing contained in the subsequent law by which this company became finally consolidated with the plaintiff in error. It remained a separate corporation, without any alteration in its charter in this respect, until the union was formed by the act of 1837. It was situated altogether in the State of Maryland. The Wilmington and Susquehanna Railroad Company was partly in Maryland and partly in Delaware, and owed its existence to a separate charter. And the law which authorizes these two companies to unite themselves with the plaintiff in error declares that this new corporation, that is, the Philadelphia, Wilmington, and Baltimore Railroad Company, shall be entitled within this State to all the powers and privileges and advantages at that time belonging to these two companies. It grants it nothing more.

Now, as these companies held their corporate privileges under different charters, the evident meaning of this provision is, that whatever privileges and advantages either of them possessed should in like manner be held and possessed by the new company, to the extent of the road they had respectively occupied before the union; that it should stand in their place, and possess the power, rights, and privileges they had severally enjoyed in the portions of the road which had previously belonged to them. And this intention is made still more evident by the fourth section of the law, which makes the new corpo-

ration responsible for the contracts, debts, obligations, engagements, and liabilities at law or in equity of the several companies, and declares that it shall hold and be entitled to all the estate, real, personal, and mixed, choses in action, &c., belonging to or due to the several companies. The plaintiff in error, therefore, took the property of the Baltimore and Port Deposit Railroad Company with all the liabilities to which it was subject in the hands of that company.

The act which incorporated the Delaware and Maryland Railroad provided that the shares in that company should be deemed and considered personal estate, and should be exempt from any tax or burden, " except upon that portion of the permanent and fixed works which might be in the State of Maryland." And the law of 1835, which authorized the union of this company with the Wilmington and Susquehanna Railroad Company, secured to the united company the property, rights, and privileges which that law or other laws conferred on them or either of them. The original exemption, therefore, of the Delaware and Maryland Railroad Company, as far as it went, was extended to the Wilmington and Susquehanna Railroad Company, and has been continued to the plaintiffs in error. But as the right of taxation on that part of the road is not in question in this suit, we forbear to express an opinion upon it. For if this restriction could be supposed to exempt from taxation the description of property enumerated in the schedule, or any part of it, it could not affect the question before us. The provisions of this charter have never been extended to the portion of the road on the west side of the river, which was constructed under the charter of the Baltimore and Port Deposit Railroad. As that company held it, so it is now held by the plaintiff in error, with the same privileges, powers, and liabilities. And as the property assessed was liable to taxation in the hands of the original corporation, it is equally liable in the hands of the company with which it is now consolidated.

The judgment must therefore be affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the Court of Appeals for the Western Shore of Maryland, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Court of Appeals in this cause be, and the same is hereby, affirmed, with costs and damages at the rate of six per centum per annum.