JANUARY TERM, 1877, TO THE JUNE TERM, 1880, INCLUSIVE.

---

NOTE.—The following opinion was rendered by HON. ALEXANDRE WHITE, while he was Chief Justice of Utah Territory, at the January Term, 1876, of the Supreme Court — and was not published in 1st Utah, because the opinion had not been filed with the Reporter. Owing to the importance of the case, it is deemed best to publish it now.

HAGAN, *Reporter*.

---

## SALT LAKE CITY NATIONAL BANK, RESPONDENT, *v.* ROBERT J. GOLDING, APPELLANT.

1. NATIONAL BANK ACT.—The National Banking Act was framed for two purposes: One was to furnish suitable fiscal agencies and safe depositaries for public moneys for the Federal Government, and the other, to provide a National currency for the people of the United States, based upon National securities and *guaranteed by the United States*.

2. TAXATION BY STATE.—In the absence of express legislation by Congress, providing for and permitting it, neither a National Bank, nor United States bonds, constituting, in whole or in part, its capital stock, can be taxed by authority of a State.

(1)

3. TAXATION OF NATIONAL BANKS BY A STATE.—A State cannot tax a National Bank which is the financial agent or public depositary of the Federal Government. A law imposing such tax would be unconstitutional.

4. TAXING POWER.—The power to levy taxes is one of the leading, if not the highest, attributes of legislative power. It is an evidence of sovereignty, without which no government could exercise the powers delegated to it.

5. TAXING CAPITAL STOCK OF A BANK.—A tax on the capital of a National Bank is not the same thing as a tax on the shares of which the capital is composed—and e converso, a tax on the shares of individuals in a National Bank is not the same as a tax on the capital stock of the Bank.

6. POWER TO TAX NATIONAL BANKS.—There is nothing in the Constitution of the United States, nor in the National Banking Act, which precludes the Territorial Legislature from taxing the franchise of banking by a tax upon the individual shares of the stockholders in National Banks.

7. TAXES PAID UNDER PROTEST.—Taxes unlawfully levied, and collected under protest, can be recovered back.

Appeal from the Third Judicial District Court.

No attorneys appear of record.

ALEXANDRE WHITE, Chief Justice, delivered the following opinion of the court:

This appeal is from a judgment of the Third District Court, and by a written agreement filed in this court by the respective counsel, the question to be decided here is, "Whether the taxes against the plaintiff, assessed and levied as set forth in the complaint, were, under existing legislation, legally assessed and levied."

This relieves us from the consideration of any other question that might arise upon the demurrer, and we shall confine our decision to the single question, and such incidental matters as grow out of it and are requisite to its proper elucidation.

The suit is brought by the plaintiff (respondent,) to recover of the defendant certain sums of money alleged to have been collected by him, as assessor and collector of Territorial and county taxes in the county of Salt Lake, in the years 1872 and 1873, of the plaintiff and against its protest, under and by

virtue of an act of the Territorial Legislature of Utah, entitled "An act prescribing the manner of assessing and collecting Territorial and county taxes," etc., approved January 20, 1865, and the acts amendatory thereof and supplementary thereto.

The plaintiff is alleged to be, and to have been since the 1st day of February, 1871, a corporation duly incorporated under the act of Congress, entitled "An act to provide a National currency secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof." Approved June 3, 1864, and the acts amendatory thereof and supplementary thereto.

The question then resolves itself into two subdivisions.

*First.* Has the Territorial Legislature the power to levy a tax of any kind, or in any form, upon corporations organized and transacting business as National Banks under the act of Congress?

*Second.* Can a tax on National Banks be levied under existing Territorial legislation, or under any legislation, in the manner in which it was levied and assessed in the case at bar?

These questions are not without difficulty, and we shall devote to them the consideration due to their importance and to the earnestness and ability with which they have been pressed upon our attention.

The substance of the argument of the counsel for respondent is, That the National Banks, being the fiscal agents of the Federal Government, and being incorporated by virtue of and under an act of Congress, can only be taxed in the manner and by the authorities named in the act of their creation.

That the act of Congress under which they are organized is the law of their being, conferring their privileges and immunities and fixing their burthens and liabilities.

That section "90" of the National Banking Act fixes and limits the amount of taxes which may be levied upon them by the Federal Government, and that no other taxes can be

levied upon National Banks, except by the express provisions of the act permitting it to be done. That the exceptions contained in section 95, allowing shares in any such banking association to be assessed for taxes as the personal property of the owner or holder, is, in its terms, confined to States, and therefore does not confer upon Territories any authority to assess or tax such shares. This being the only form in which individual property in such banking associations is allowed to be taxed, under the act of their incorporation, it is insisted that a Territorial Legislature has no power to authorize the assessment and collection of a tax upon either the capital stock or shares of stock in a National Bank. The capital stock of a National Bank and shares in the bank are different things, as to which we shall have occasion to say more in a subsequent part of this opinion, but now we propose to discuss the correctness of this proposition in reference to shares in a National Bank. The National Banking Act was framed for two purposes: One was to furnish suitable fiscal agencies and safe depositories for public moneys for the Federal Government, and the other, to provide a National currency for the people of the United States, based upon National securities and guaranteed by the United States. To accomplish this end by inducing the organization of such associations, the privilege of banking was conferred upon them, which, under the restrictions imposed by said act upon other banking institutions, amounts almost to a monopoly of the business of banking in the whole country. The result is that the vast property which is represented by banking capital, and the profits of a business which permeates every community and vocation, and whose profits are proverbially good and often large, is centered in these National Banking Associations. In the absence of express legislation by Congress, providing for and permitting it, neither a National Bank which is a public depositary or financial agent of the Federal Government, nor United States bonds, constituting in whole or in part its capital stock, can be taxed by authority of a State. In *McCulloch* v.

*State of Maryland*, 4 Wheaton, it was determined by the Supreme Court of the United States that a law of Maryland, imposing a tax on the operations of the bank (a branch bank of the United States), was unconstitutional. See Curtis' Decisions of Sup. Court of the U. S., vol. 4, p. 415; 4 Wheaton, 318, and in *Weston and others* v. *The City Council of Charleston*, it was decided by the same court that a tax on stock of the United States, held by an individual citizen of a State, is a tax on the power to borrow money on the credit of the United States, and cannot be levied by or under the authority of a State, consistently with the Constitution. *Ib.*, vol. 8, p. 171; 2 Peters, 463.

These cases settled principles which, both in the reasoning upon which they are based and in the conclusions announced, have been repeatedly re-affirmed by the Supreme Court of the United States, and have been long accepted in the courts of this country as established law.

The act of Congress of February 25, 1862, section 2, provides: That all stocks, bonds and other securities of the United States held by individuals, corporations or associations within the United States shall be exempt from taxation by or under State authority. In view of this rule, established by authority and embodied into statute law of the United States, it was doubtless thought by Congress in enacting the National Banking Act, unless they intended to withdraw all the banking capital of the country from State taxation, to be proper, if not necessary, to express by the terms of the act itself the subject matter as well as the measure of taxation by the State of the banking associations to be incorporated under that act. The franchise of banking has always been recognized as the legitimate object of taxation, and as the purpose and tendency of the National Banking Act was to draw to National Banks all capital invested in banking, and as they were institutions incorporated under an act of Congress with a view to certainty and protection to the banks themselves and justice to the communities in which they might be located, it was expedient, and

in the case of the States, necessary to express the mode and the limit of taxation by the States of these institutions, by the express terms of the act of Congress authorizing their creation.

By the terms of the act of Congress, 95th section, Territories are not included, and it is insisted that this is the provision in the act which enables the States to tax shares in National Banks, and that without it they would have no power to tax them, and that it follows *a fortiori* that Territories upon whom no such power is conferred by the act cannot tax these corporations in any form. This proposition, the most important in the case under consideration, we propose as briefly as is consistent with perspicuity to discuss. A State cannot tax a National Bank which is the financial agent or public depository of the Federal Government, because, as such, it is one of the agencies created and used by the Federal Government for carrying out or exercising powers conferred upon it by the Constitution of the United States, and because a State is a sovereign power in this regard, independent of and beyond the control of the Federal Government, and as the power to tax all things within the scope of its authority is in a State, limited only by its discretion, the power to tax the means which the Federal Government adopts for the exercise of its constitutional powers is inconsistent with the free and unrestrained use of those means by the Federal Government, and consequently is repugnant to the Constitution of the United States, and as the Constitution of the United States, and the laws passed in pursuance thereof, are supreme, a power claimed for a State incompatible therewith must be unconstitutional and void. The foundation of the rule and substance of the reason which supports it is that a State as a sovereignty is without and beyond the control of the Federal Government in the exercise of its taxing powers, and that to admit the right in a State to exercise this power upon constitutional agencies of the Federal Government might impede, obstruct or destroy them, and thus, by indirection, clothe the

States with the power to defeat the ends and objects of the Federal Government. A reference to authority will illustrate and enforce this proposition with a clearness and force which precludes doubt upon the subject. Referring to *McCulloch* v. *State of Maryland*, 4 Wheaton, *Weston* v. *City Council of Charleston*, 2 Peters, and a number of other kindred decisions, Mr. Justice WILSON, in *Bank of Commerce* v. *New York City*, 2 Black. 633, says: "The conclusive answer to the attempted exercise of State authority in all these cases is that the exercise is in derogation of the powers granted to the General Government within which it is admitted it is supreme."

That government whose powers, executive, legislative or judicial, whether it is a government of enumerative powers like this one, or not, are subject to the control of *another distinct government*, cannot be sovereign or supreme, but subordinate to and inferior to the other. 2 Black. 633, 634.

In *National Bank* v. *Commonwealth*, 9 Wallace, the court says: But it is argued that the banks being instrumentalities of the Federal Government by which some of its most important operations are conducted cannot be subject to such State legislation. It is certainly true that the Bank of the United States and its capital were held to be exempt from State taxation on the ground here stated, and this principle laid down in *McCulloch* v. *State of Maryland* has been repeatedly affirmed by this court. But this doctrine has its foundation in the proposition that the right of taxation may be so used in such cases as to destroy the instrumentalities by which the Government proposes to effect its lawful purposes in the State. 9 Wallace, 361.

There is no express constitutional prohibition against taxation by the States of these instrumentalities of the Federal Government, nor is there anything in the objects proposed to be taxed exempting them from taxation, nor is there any limitation in a general point of view of the power of a State as sovereign to levy taxes at discretion. The only foundation

or support which the rule has is that the exercise of such a power by a State is incompatible with the free exercise of the constitutional powers of the Federal Government and repugnant to the constitution of the United States, because the power of taxation in a State is independent of the control of the General Government. Does this rule extend to Territorial Legislatures? We think not; because neither the rule nor the reason of the rule applies to them. The States derive their powers from the people of the States, and are sovereign and supreme within their territorial limits, except so far as they have ceded constituents of that sovereignty and supremacy to the Federal Government. They are only subject and subordinate to the power of the United States in the particulars expressly declared or necessarily implied in the Constitution of the United States.

The Territorial Governments are the creations of Congress, derive all their powers from them, exercise them subject to their disapproval, and hold them at their will. Such governments can levy no taxes of any kind contrary to the will of Congress, and consequently, by the rule to which we have above referred, in reason or in principle, can have no application to them. If, then, the inhibition imposed upon the States does not rest upon the Territories, then, as all the powers of the Territorial Governments are delegated by Congress, we must look to the grant in its organic act to determine whether it has the power to levy a tax upon National Banks. The power to levy taxes is one of the leading if not the highest attributes of legislative power. It is said to be an evidence of sovereignty, without which no government could exercise the powers delegated to it. Blackwell on Tax Titles, 2; *McCulloch* v. *State of Maryland*, 4 Wheaton, 316, 428; *Providence Bank* v. *Billings*, 4 Peters, 514, 561, 563.

The power of Congress to create Territorial Governments, and delegate to them the powers of government necessary and proper for the condition of the people of the Territory, is too well settled to require authorities to support it.

It has been the uniform policy and practice of the Government of the United States with regard to its Territories, and the acts of Congress providing for Territorial Governments are regarded as the organic law of the Territories, enforcing and limiting the powers of such governments.

Power to tax is granted for the benefit of all, and none have a right to complain if the power is fairly exercised and the proceeds are properly applied to discharge the obligations for which the taxes were imposed. Such a power resides in government as part of itself, and need not be reserved when property of any description, or the right to use it in any manner, is granted to individuals or corporate bodies.

Unless exempted in terms which amount to a contract, the privileges and franchises of a private corporation are as much the legitimate subject of taxation as any other property of the citizen which is within the sovereign power of the State. Repeated decisions of this Court have held, in respect to such corporations, that the taxing power of the State is never presumed to be relinquished, and consequently that it exists unless the *intention* to relinquish it is *declared* in clear and unambiguous terms. *Society for Savings* v. *Coite*, 6 Wall. 606; *P. & W. R. R. Co.* v. *Maryland*, 10 How. 393.

Private corporations engaged in their own business and pursuing their own interests, according to their own will, are as much subject to the taxing power of the State as individuals, and it cannot make any difference whether the law is imposed upon their property, unless exempted by some paramount law, or the franchise of the corporation, as both are alike under the protection and control of the sovereign power. Angel & Ames on Corp., 8th ed., § 438; *Brown* v. *Maryland*, 12 Wheaton, 444.

Upon reference to the act of Congress " To establish a Territorial Government for Utah," we find in section 6 as follows: " That the legislative power of said Territory shall extend to all rightful subjects of legislation consistent with the Constitution of the United States and the provisions of this act; but

no law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed upon the property of the United States; nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents. All the laws passed by the Legislative Assembly and Governor shall be submitted to the Congress of the United States, and, if disapproved, shall be null and of no effect."

This section confers legislative power in the amplest sense, restricted only by the express terms of the act itself. The Territorial Legislature can, under this authority, levy any tax not inconsistent with the Constitution of the United States, subject to the rule of equality prescribed in this section, except a tax upon the property of the United States. The bonds, stocks, and other securities of the United States, are, as we have shown, exempted from taxation by the act of Congress of 1862, and so far as the assets or property of the bank, consisting of these, are not subject to taxation, but such are not and do not embrace shares in a National Bank. These are the personal property of the individual stockholders, and as such are liable to taxation, as other personal property. The reason which would prompt Congress to declare these shares liable to assessment for taxes by the States, would not apply to the Territories, because the rule of repugnancy between sovereign and independent powers, which has been held to exclude the States from taxing National Banks, fiscal agents of the Federal Government, could never appertain between a sovereign and subordinate power, and therefore there was no necessity or propriety in extending the provisions of this section to the Territories.

The principle (says Mr. Justice MILLER, in the case above referred to, 9 Wallace, 362,) we are discussing, is the principle established in *McCulloch* v. *State of Maryland*, " has its limitation a limitation *growing out of the necessity* in which the principle is founded. That limitation is that the agencies of the Federal Government are only exempted from State

legislation so far as that legislation may interfere with or impair their efficiency in performing the functions by which they are designed to serve the Government. * * *

" They (the banks) are subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than of the Nation. All their contracts are governed and construed by State laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on State laws. It is only when the State law incapacitates the banks from discharging their duties to the Government that it becomes unconstitutional. We do not see the remotest probability of this in their being required to pay the tax which the stockholders owe to the State for their shares of the capital stock," etc.

A tax on the capital of a bank is not the same thing as a tax on the shares of which the capital is composed. *Bradley* v. *The People*, 4 Wall. 459; *Van Allen* v. *The Assessors*, 3 Wall. 573; and *e converso*, a tax on the shares of individuals in a National Bank is not the same as a tax on the capital stock of the bank.

We conclude that there is nothing in the Constitution of the United States, nor in the National Banking Act, which precludes the Territorial Legislature, under its comprehensive grant of legislative power, from taxing the franchise of banking by a tax upon the individual shares of stockholders in National Banks.

Under the broad and sweeping principle declared in *McCulloch* v. *Maryland*, with reference to kindred institutions, fiscal agents of the Federal Government, the declaration contained in section 41 of the National Banking Act, with regard to the power of the States to tax shares in National Banks, was expedient whether necessary or not, but as that rule did not apply to the Territories, there was no propriety in their being named in the section reserving the right to the States to tax these shares.

This brings us to the second question we propose to consider:

Can a tax on National Banks be levied under existing Territorial legislation, or under any legislation, in the manner in which it was assessed and levied in this case of the appellee.

The tax, as assessed and levied in this case, was upon the capital stock of the bank, as we infer from the statements in the complaint, which, on demurrer, are to be taken as true, and this capital stock consisted of bonds, which are exempt by act of Congress from taxation.

It follows, that the assessment and levy in this form was unlawful, and the money having been paid after levy and under protest by the bank, can be recovered back in this form of action; nor do we think the act of the Territorial Legislature, authorizing an assessment of all taxable property at a fair cash value, provides the proper standard of assessment for taxing shares in a National Bank; nor does it secure that uniformity of taxation with reference to other banking capital or moneyed capital at interest, which lies at the basis of all American systems of taxation, specifically indicating the form of such legislation. We think it should provide that shares in such institutions should be taxed at their nominal value and at the same rates with other banking capital or moneyed capital at interest in the Territory.

Let the judgment of the court below be affirmed.

EMERSON, J., concurs.

BOREMAN, J., dissenting.