HEARD NOV. TERM, 1871.

## Rose vs. Charleston.

So much of the "Act to extend the limits of the City of Charleston," passed December 19th, 1849, as exempted from city taxation all lands, horses &c., which may be exclusively employed in agriculture," was repealed by the "Act to enforce a uniform system of assessment and taxation by municipal bodies," approved March 1, 1870.

The subject of taxation is one over which the Legislature of the State has full sovereign power in all matters wherein such power is not limited or restricted by some Constitutional provision.

The exemption contained in the Act of 1849 was not a contract, or in the nature of a contract with the owners of the exempted property, but a mere Legislative limitation or restriction upon the taxing power of the corporation, and was subject to repeal or modification at the will of the State.

The word "heretofore," in Sec. 8 of Art. IX of the Constitution of the State, was used in the sense of "hereinbefore."

BEFORE GRAHAM, J., AT CHARLESTON, APRIL TERM, 1871.

This was a suggestion by Arthur B. Rose, relator, against the City Council of Charleston, respondent, for a writ of prohibition. Four other suggestions for the same writ and against the same respondent—one by Arthur G. Rose, relator, one by David Geiger, relator, one by John C. Cochran, relator, and the last by the South Carolina Jockey Club, relator—were heard at the same time with this one. They all raised the same points of law, and in other respects were substantially the same.

The suggestion in the case of Arthur B. Rose is as follows :

Arthur B. Rose, a citizen of the State of South Carolina, and of the United States of America, respectfully showeth, that he has been for several years previous to the first day of January, Anno Domini eighteen hundred and seventy, and has ever since then been and now is the owner of certain horses, mules, carts, wagons, and other articles of personal property, situate upon and used upon land within the municipal corporation created by the laws of South Carolina, under the corporate name of the City Council of Charleston, and known as the City of Charleston ; that the said lands whereon the said articles of personal property are situate and used are in the limits of Charleston Neck, that is, in that part of the said city north of Calhoun Street, formerly Boundary Street, and south of a line drawn due west from Cooper to Ashley River, by the junction of King and Meeting Streets; that on and before the first day of January, Anno Domini eighteen hundred and seventy, the said articles of personal property were used, and have ever since, and now are exclusively and actually employed in agriculture upon the aforesaid lands.

24

And this relator further showeth, that the said articles were bought by this relator for the sole purpose of being employed in agriculture on Charleston Neck, because of, and upon the faith of the exemption of such articles so employed from taxation by the City of Charleston, which exemption is in the nature of a contract with the said owners of such articles.

This relator further showeth, that the said City Council of Charleston, by an Ordinance entitled " An Ordinance to raise supplies for the fiscal year ending on the thirty-first day of December, Anno Domini eighteen hundred and seventy," and enacted on the twenty-second day of March, Anno Domini eighteen hundred and seventy, has imposed a tax of        dollars upon this relator's said articles of personal property, for the benefit of the said city; that the said tax is now due and payable; that, as this relator is informed and believes, the same is to be applied, amongst other things, not only in payment of debts contracted under authority of law, but also in payment of debts of the said city, contracted previous to the nineteenth day of December, Anno Domini eighteen hundred and forty-nine; and that the said City Council, through its proper officers, has or is about to issue execution against this relator for the said tax, and is threatening to levy the same upon this relator's property.

And this relator avers that his said personal property is exempt by law from taxation by the said City Council of Charleston; and that the said doings and actings of the said City Council of Charleston are contrary to law, and he prays that a rule may issue, directed to the said City Council of Charleston, commanding it, at a time and place to be therein specified, to show cause why a writ of prohibition should not issue, forbidding it to levy or in any way enforce the said tax against this relator.

The answer of the City Council is as follows:

I. The City Council of Charleston is a municipal corporation, created by an Act of the Legislature of South Carolina, ratified the 13th day of August, 1783, entitled " An Act to incorporate Charleston." By the authority conferred on them by the said Act of incorporation, they have power, among other things, to " make such assessment on the inhabitants of Charleston, or those who hold taxable property within the same, for the safety, convenience, benefit and advantage of the City of Charleston, as shall appear to them expedient; and they are also authorized to appoint a Treasurer and

all such other officers as shall appear to them requisite and necessary, to carry into effectual execution all by-laws, rules and ordinances they may make for the good order and government of said city," &c.

II. That by an Act of the Legislature of said State, ratified the 19th day of December, 1849, entitled " An Act to extend the limits of the City of Charleston," it is provided that " all that part of St. Philip's Parish, lying between the present limits of the city and a line to be drawn due west from Cooper River to Ashley River, by the junction of Meeting and King streets, be divided into four wards, &c.; * * * * and the jurisdiction and authority of the City Council of Charleston shall be extended over all that part of St. Philip's Parish, and the same shall be, to all intents and purposes, incorporated with the City of Charleston." It is also provided by said Act, that " all lands, slaves, horses, carts, &c., which may be exclusively employed in agriculture, shall, while so employed, be exempt from city taxation." It is also provided by the second Section of said Act, that " all laws and regulations of force in the City of Charleston, shall extend and be binding over that part of St. Philip's Parish, hereby incorporated with the city; subject only to the foregoing conditions and restrictions, and to such modifications as may from time to time be made therein by future legislation, or by necessary implication."

III. By Section 8 of Article IX of the Constitution of the State of South Carolina, adopted April 16, 1868, it is provided that " the corporate authorities of counties, cities, &c., may be vested with power to assess and collect taxes for corporate purposes, and the General Assembly shall require that all property except that heretofore exempted within the limits of municipal corporations shall be taxed for the payment of debts contracted under authority of law." By an Act of the General Assembly of said State, entitled " An Act to enforce a uniform system of assessment and taxation by municipal bodies," approved March 1st, 1870, it is provided, among other things, that " all corporations * * * * vested with power to lay and collect taxes, are hereby authorized and required to assess all property, real and personal, within their corporate limits at its actual value, and lay all taxes thereon at a uniform and equal rate * * * *."

IV. That the provisions of the said Section 8, Article IX, of said Constitution, and the provisions of the said Act of March 1st, 1870, have repealed so much of the said Act to extend the limits of the

City of Charleston, as exempts all lands, slaves, horses, carts, &c., which may be exclusively employed in agriculture, from city taxation.

V. By an Act of the General Assembly of said State, entitled "An Act to regulate the assessment and taxation of personal property in the City of Charleston," approved March 1, 1870, it is provided that "the Act entitled 'An Act to provide for the assessment and taxation of property,' " approved September 15, 1868, shall be extended to the City of Charleston, for the purpose of assessment and taxation of personal property, so far as the same shall be applicable, &c. Under the authority of the said Constitution and Acts of General Assembly, hereinbefore recited, the City Council of Charleston ratified an Ordinance on the 22d day of March, 1870, entitled "An Ordinance to raise supplies for the fiscal year ending December 31st, 1870," the first and second Sections of which are as follows :

" Sec. 1. That the City Appraiser is hereby authorized to assess a tax of two cents upon the dollar of the value of all real and personal property in the City of Charleston, for the purpose of meeting the expenses of the city government for the current fiscal year.

" Sec. 2. The taxes assessed under this ordinance, except such as are otherwise directed, shall be payable in three equal parts; one part on or before the 10th day of April next; another part on or before the last day of June next; and the third part on or before the last day of September next." Pursuant to the said Ordinance the City Council of Charleston, through the City Appraiser, assessed the tax of two cents upon the dollar, of the value of all real and personal property of the said Arthur B. Rose, amounting to (211) two hundred and eleven dollars, notice of which tax was duly given to the said Rose, and payment thereof demanded; but neither the said tax or any part thereof was paid at the time or times required by the provisions of the Ordinance aforesaid. Said taxes not having been paid as required by law, the City Treasurer of said city added a penalty of 20 per cent. thereon, as required by the 43d Section of the Ordinance of the said City Council, entitled "An Ordinance to provide for the assessment and taxation of property," ratified the 10th day of February, 1870, which Section is in words as follows, to wit : " When the taxes, assessments and penalties charged against any parcel or lot of real or personal property, shall not be paid on or before the day prescribed by the ordinance, a penalty of 20 per cent. thereon shall be added by the City

Treasurer; and if said taxes and penalty shall not be paid within thirty days next thereafter, or collected by distress or otherwise, the penalty and said taxes shall be treated as the delinquent taxes on such real or personal property to be collected in the manner that is or may be prescribed by law; and if the amount of such delinquent taxes, assessment and penalties shall not be paid within thirty days next thereafter, the delinquent taxes, assessments and penalties of the current year shall be due, and collected by the sale of such real or personal estate in the manner that is or may be required by law;" and certified the said tax and the penalty added by him thereto to George Addison, City Sheriff, who thereupon proceeded to collect the same as required by the 48th Section of the Ordinance last aforesaid, which Section is in words as follows, to wit: "When the taxes and assessments charged against any party or property on the Property Return, shall not be paid on or before the day prescribed by Ordinance, or where the remainder of such taxes and assessment shall not be paid, on or before the day prescribed by the Ordinance thereafter, together with the penalty on such remaining unpaid, the City Sheriff, to whom the same shall be certified by the City Treasurer, shall proceed to collect the same by distress or otherwise, as may at the time be prescribed by law, together with a penalty of five per cent. on the amount so delinquent, which penalty shall be for the City Sheriff as a compensation for making such collection."

VI. These defendants deny that the exemption from taxation provided for by the said Act, to extend the limits of the City of Charleston, is in the nature of a contract with the owners of articles enumerated therein, as exempt from such taxation, and they say that if such exemption were in the nature of a contract, it was for a limited period only, and to continue for so long a period as might seem proper to the Legislature of said State. The said period of exemption from taxation as aforesaid, expired at the time of the adoption of the Constitution of 1868, of said State, if not before; and from and since said day all property within the corporate limits of said city, except such as is exempted from taxation by said Constitution, is liable to municipal taxation by these defendants. And the actings and doings of these defendants under said Acts of the General Assembly, and said ordinances, are in strict conformity to law, and they ought not to be prohibited from collecting the taxes lawfully assessed by them as aforesaid.

Wherefore, these respondents, having fully answered, pray that

they may be hence discharged with their reasonable costs and charges.

The Circuit Court Judge made the following order:

On reading and filing the suggestion and answer in the above entitled cause, and after hearing counsel for the relator and motion for writ of prohibition, and the counsel for the respondents in opposition thereto: Ordered, That the relator's suggestion in this action be dismissed and motion be denied with cost, and that an order be entered accordingly.

The same order was made in each of the other cases, and the relators, severally, appealed.

*Magrath, Barker*, for appellants, contended that the Act of 1849 was not repealed, either by Section 8, Art. IX, of the Constitution, or by the Act of March 1, 1870, and cited Cooley on Con. Lim., 191-2-4-5; *Dunham* vs. *Rochester*, 5 Cow., 465; *Rex* vs. *Pugh*, 1 Doug., 135; Dwar. on Stat., 530, 532-3. That the exemption claimed by relators, under the Act of 1849, is a contract between the State and the owners of the lands which the State is prohibited from impairing by the Constitution of the United States.

*Corbin*, City Attorney, contra, filed a brief in which the several points involved in the case were discussed at considerable length and a number of authorities cited. It summed up the argument as follows:

1. The property of the relator is taxable by the State and by the City Council of Charleston, unless exempted by law, because "all subjects over which the sovereign power of the State extends, are objects of taxation."—*McCullock* vs. *The State of Maryland*, 4 Wheat., 316; *Weston* vs. *The City Council of Charleston*, 2 Pet., 462; *Thompson* vs. *Pacific Railroad*, 9 Wall., 579; *People* vs. *Commissioners of Taxes*, 21 H. Pr. R., 400; *Bank of Chenango* vs. *Brown*, 26 N. Y., 467; *Bulow and Potter* vs. *City Council*, 1 N. & McC., 528; Ang. and A. on Corp., § 437; *Catlin* vs. *Hull*, 21 Vt., 152; *Vestry* vs. *Council*, McM. Eq., 144.

2. The exemptions provided for by the Act of 1849 were not perpetual, but subject to modification by future legislation or by necessary implication, and, therefore, were not contracts, or if contracts were determinable at the will of the State.—In the matter of the *Reciprocity Bank*, 17 How. Pr. R., 332.

3. The rule of taxation imposed by the Act of 1849 was not uni-

form, inasmuch as it exempted certain kinds of property from taxation in one portion of the City of Charleston while it left the same kinds of property subject to taxation in other portions of the city.

4. The rule of taxation laid down by the Act of 1849 was unjust and oppressive, as it exempted persons holding certain kinds of property, in a certain portion of the city, from a public burden, common to all citizens, without exacting from them a *bonus* or an equivalent duty as the price of such exemption.

5. The unequal, unjust and oppressive rule laid down by the Act of 1849, has been abolished, and the just and equal rule of the Constitution and the Act of March 1st, 1870, has been substituted therefor.

6. The exemption of property situate on Charleston Neck, from the burden of taxation to pay the debts of the old city, was an exercise of the power of State sovereignty. There is no pledge, express or implied, that this power should not thereafter be exercised. See *Gilman* vs. *City of Sheboygan*, 2 Black, 510.

7. The exercise of the power of State sovereignty, in providing for a uniform rate of taxation of all property within the City of Charleston, to pay such debts as well as others common to the city, is not in violation of the Constitution, as impairing the obligation of a contract, or as being an *ex post facto* law.—*Satterlee* vs. *Matthewson*, 2 Pet., 380; *Locke* vs. *New Orleans*, 4 Wall., 172; *Carpenter* vs. *Pennyslvania*, 17 How., 461.

The power of taxation, or the exemption therefrom, is not secured by contract between the State and its citizens. "Nor are taxes contracts between party and party, either express or implied; but they are the positive acts of the government, through its various agents, binding upon the inhabitants, and to the making or enforcing of which their personal consent, individually, is not required."— *Pierce* vs. *City of Boston*, 3 Met., 520.

8. The Ordinance of March 22, 1870, being in conformity to the Constitution and the Act of March 1st, 1870, and the property of the relator not being exempt from taxation, by any law of force at that time, was properly taxed.—*Bulow & Potter* vs. *City Council*, 1 N. & McC., 528.

May 1, 1872. The opinion of the Court was delivered by

MOSES, C. J. These cases all present the same issue, and were heard together.

They seek, by prohibition, to restrain the City Council of Charles-

ton from the collection of taxes imposed by it on certain real and personal property, which the relators aver, by an Act of the Legislature to be presently referred to, is exempt from taxation.

It appears that in 1849 it was deemed proper and expedient, from " the growing importance and increasing population of that part of the Parish of St. Phillip which lies north and west of Boundary street, to unite the same with the city of Charleston." Accordingly, the Legislature, on the 19th of December of the same year, (11 St., 579,) passed an Act in the preamble of which the words above quoted are found, incorporating the said territory with the city of Charleston, " to all intents and purposes, subject, however, to the following conditions and restrictions, that is to say:

" 1st. That all the debts of the city, now in existence, shall be charged on the property now possessed by the city, and paid by those now liable for the same.

" 2d. That all taxes to be levied upon that part of St. Phillip's Parish hereby incorporated with the city, within ten years next succeeding such incorporation, shall be applied exclusively in manner following, that is to say, first to pay a proportionable part of the general expenses of the corporation, and next to the special and proper benefit and improvement of that part of St. Phillip's Parish hereby incorporated with the city.

" 3d. That all lands, slaves, horses, carts, &c., which may be exclusively employed in agriculture, shall, while so employed, be exempt from taxation."

The fourth condition is in respect to the erection of wooden buildings, and has no bearing on the question raised by the suggestion.

The second Section of the Act provides " that all the property belonging to the city of Charleston shall be vested in the corporate body to be formed by the annexation herein provided for, subject only to the claim of the present creditors of the city for payment of their demands out of the coffers or revenues of the same, and that all the laws and regulations of force in the city of Charleston shall stand, and be binding over that part of St. Phillip's Parish hereby incorporated with the city, subject only to the foregoing considerations and restrictions, and to such modifications as may, from time to time, be made therein by future legislation, or by necessary implication."

The relators severally allege that they are owners, either of real or personal property, exclusively employed in agriculture, and ex-

empt from city taxation, which the Council is about to enforce under its Ordinance of March 22, 1870, entitled "An Ordinance to raise supplies for the fiscal year ending December 31, 1870."—City Ordinances, 1870, p. 706.

Unless the Act of 1849 can be construed to confer a perpetual exemption, founded on contract, it is subject to repeal or modification, by the Legislature, as its judgment may best direct. Where that department of the government, within the sphere of its constitutional limits, exercises the functions which properly belong to it, either to the imposition of restrictions upon the people of the State, or discharging them from exactions it had the right to demand, its action is to be referred to its inherent sovereignty, and not to any compact in the nature of a contract. What single element, necessary to the constitution of a contract, is embraced in the Act? What is to be found in it, or in the history of its enactment, to show that the inclusion of the new territory in the corporation was with the express consent of the residents, who were to be brought within the operation of the city charter, on the condition that "their property, employed in agriculture," was to be exempt from taxation? What was the consideration moving the State to the contract? The assent of those who were to be made corporators was not necessary to its passage, or to its validity. No power within their means could have prevented the execution of the intention of the Legislature. If the General Assembly did not desire, suddenly and unexpectedly, to impose a burthen on the agricultural industry of the Parish about to be annexed to the city, from which it had, heretofore, been free, and, therefore, exempted it from taxation, to what consideration will the relators refer for their claim to its perpetual enjoyment? The "conditions and restrictions," which the Act imposed as limitations on the power of the corporation over the enlarged boundaries to which its jurisdiction was to extend, are set up as a surrender of a sovereign right on the part of the State. The Legislature was dealing with the corporation in the extension of the city boundaries, and prohibited it from taxing those in the condition of these relators. It was a restriction on a right which they otherwise legitimately could have exercised. What excluded the Legislature from now releasing the corporation from the imposed restrictions? The Legislature was dealing with the corporation, which certainly makes no complaint of the violation of the supposed contract. The main distinction between public and private corporations is that, over the former,

the Legislature, as the trustee or guardian of the public interests, has the exclusive and unrestrained control; and acting as such, as it may create, so it may modify or destroy as public exigency requires or recommends, or as the public interest " will be the best subserved."—Angell & A. on Corp., § 31.

Mr. Cooley, in his work on Constitutional Limitations, p. 192, says: " The creation of municipal corporations, and the conferring upon them of certain powers, and subjecting them to corresponding duties, does not deprive the Legislature of the State of that complete control over their citizens which was before possessed. It still has authority to amend their charters, enlarge or diminish their powers, extend or limit their boundaries, consolidate two or more into one, overrule their actions whenever it is deemed unwise, impolitic or unjust, and even abolish them altogether in the legislative discretion."

The principles upon which the decision in the case of *The Rector, &c., of Christ Church, &c.,* vs. *County of Philadelphia,* 24 How., 300, rested, well apply here. In 1833 the Legislature of Pennsylvania exempted from taxation the real property and ground rents belonging and payable to Christ Church Hospital, so long as the same shall continue to belong to said hospital. In 1851 it required that all property, real and personal, belonging to any company or association which is now by law exempt from taxation, shall hereafter be subject to taxation as other property is now by law taxable. It was held that the last law was not in violation of the Constitution of the United States, as tending to impair a legislative contract; that it is in the nature of such a privilege as the Act of 1833 confers, that it exists *bene placitum,* and may be revoked at the pleasure of the sovereign.

The suggestion seeks a prohibition on the further ground that the tax raised under the Ordinance of March 1, 1870, is " to be applied, amongst other things, not only in payment of debts contracted under authority of law, but also in payment of debts of the said city contracted previously to the 19th December, 1849." This objection was not referred to in the argument on behalf of the relators. It proceeds upon the assumption that the Act of 1849 is a covenant on the part of the State with the owners of the land, and, therefore, not subject to repeal or modification. It involves the general principle on which the relators claim exemption from the tax now about to be enforced against them, and, as it cannot be sustained, this must fall with it. Holding that the restriction imposed by the said Act on the City Council, in the imposition of taxes on the real

and personal property of the relators employed in agriculture, was subject to revocation at the pleasure of the Legislature, it only remains to enquire whether the prohibition has been repealed.

Unless the Constitution of 1868 qualified the power of the Legislature over municipal corporations, in the matter of taxation, it retained all the authority which it had in that respect up to the time of its adoption. The modification, too, is not to be presumed—it must be direct, apparent and undisputable. Speaking of the power of taxation, Ch. J. Marshall, in *Providence Bank* vs. *Pittman*, 4 Pet., 561, says: "But as the whole community is interested in retaining it undiminished, that community has a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of the State to abandon it does not appear." In *Philadelphia and Wilmington Railroad Co.*, vs. *Howard*, 10 How., 393, Taney, C. J., said: "This Court, on several occasions, has held that the taxing power of a State is never presumed to be relinquished unless the intention to relinquish is declared in clear and unambiguous terms." As "the City Council is invested with the same powers to impose taxes on legitimate subjects of taxation as the State itself possesses," (*Bulow and Potter* vs. *the City Council of Charleston*, 1 N. & McC., 527; *Cruikshanks* vs. *Same*, 1 McC., 360,) the same rule must apply to the taxing power within the bounds conceded to it by the Legislature. So far from the Constitution laying any restraint on the powers of the Legislature over municipal corporations in the matter of taxation, the first Section of ninth Article requires that "the General Assembly shall provide by law for a uniform and equal rate of taxation." The eighth Section of the same Article provides that "the corporate authorities of Counties, townships, school districts, cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes, such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same." It would be without avail to look to the Constitution of 1868, for any abatement of the power which the Legislature could before lawfully exercise over municipal corporations in the matter of taxation.

The only enquiry which remains, is whether the Legislature directly or by implication has repealed the Section of the Act of 1849, under which the exemption here is claimed? The Act of March 1, 1870, entitled "An Act to enforce a uniform system of assessment and taxation by municipal bodies," (14 Stat., 410,) declares "that all municipal corporations chartered under, or by the

laws of this State, and vested with power to lay and collect taxes, are hereby authorized and required to assess all property, real and personal, within their corporate limits, at its actual value, and lay all taxes thereon at a uniform and equal rate: *Provided,* That all property, and no other, exempted from taxation by the third Section of the Act entitled ' An Act to provide for the assessment and taxation of property,' ratified the 15th day of September, A. D. 1868, shall be exempted from taxation by municipal corporations ;" and the second Section declares "that all Acts or parts of Acts inconsistent with this Act be and the same are hereby repealed." The said Act certainly does not exempt any property from its operation, save that which is covered by the proviso. As to the property liable to taxation, it leaves nothing discretionary with the corporations, for it requires " an assessment of all property within their corporate limits at its actual value," and that they shall " lay all taxes thereon at a uniform and equal rate." The language is so full and comprehensive—the intent so apparent, and the repugnancy to the Act of 1849 so entire—that human ingenuity, exercised to its fullest capacity, must fail to reconcile them. If the property of these relators is within the corporate limits of the city of Charleston, it is by express enactment subject to taxation " at its actual value and at a uniform and equal rate." The intent of the Act of 1870 was to secure the " uniform" system of taxation required by the Constitution. If the Act of 1849 still continues of force, the system so contemplated could not be enforced in the municipal corporation of Charleston.

If there was a doubt remaining as to the utter inconsistency of the two Acts, it should be satisfied by the language of the proviso, which exempts from municipal taxation the property specified in the third Section of the Act of 1868, " and no other," and the property of the character of that held by these relators, as set forth in the suggestions, is not included in the said Section.

It is claimed that the said property of these relators is exempt from the tax sought to be enforced against them, by the effect of the words to be found in said 8th Section of Article IX, which are as follows : " And the General Assembly shall require that all the property, except that heretofore exempted, within the limits of municipal corporations, shall be taxed for the payment of debts contracted under the authority of law." To construe the word " heretofore" in the connection with which it is found, as referring to all property before exempt, would be in disregard of the mani-

fest purpose of the convention in the system of taxation which it was establishing for the State, and for those corporate bodies which, by its authority, exercised the power of imposing it. The State was required to enact laws to carry out certain directions as to exemptions. With this exception, it retained its discretionary right in the exercise of the taxing power. The word "heretofore" must be held to refer to the property exempted by that portion of the Constitution which precedes the Section in which it is found, and to be accepted in the sense of hereinbefore.

The motions in the several cases are refused, and the appeals dismissed.

*Willard*, A. J., and *Wright*, A. J., concurred.