Mr. Justice SWAYNE
stated the case and delivered the opinion of the court.
This is a writ of error to the District Court of the Western District of Arkansas. The case,, so far as it is necessary to state it, lies within a narrow compass.
The proceeding was instituted by the defendants in error to procure the condemnation and forfeiture of the tobacco in question, and of the other property described in the libel of information, for alleged violations, which are fully set forth, of the revenue laws of the United States. Elias C. Boudinot, for himself and his copartner, Stand Wattie, interposed, and by his answer submitted, among others, the followng allegations: That the firm were the sole owners of the property described in the libel; that the property was found and seized in the Cherokee nation, outside of any reveuue collection district of the United States; that the manufacturing of the tobacco was-carried on in the Cherokee nation, and that the manufactured tobacco, raw material, and other property, were never within any collection district, nor subject to the taxes mentioned in the libel, nor were the owners bound to comply with the requirements of the revenue laws of Congress; that the revenue laws were complied with as to all tobacco sold or offered for sale outside of said Indian country, if any such there were; that the claimants are Cherokee Indians by blood, and residents of the Cherokee nation, and they deny that the property had become forfeited as alleged in the libel.
At the trial, the claimants moved the court to instruct the jury that the act of Congress, entitled “ An Act imposing taxes on distilled spirits, and for other purposes,” approved July 20th, 1868, is not in force iu any part of the Indian territory embraced iu the Western District of Arkansas; that the 10th article of the treaty of 1866, between the Cherokee nation and the United States, was in full force with reference to the territory of the Cherokee nation; that the *618 67th section of the act of 1868 requires stamps to he sold only to manufacturers of tobacco in the respective collection districts, and that it gave the claimants no legal right to buy such stamps to place on their tobacco in the Cherokee nation, and that they are not responsible for not having done so. The court refused to give these instructions. The jury found for the United States, and judgment was entered accordingly. The claimants excepted to the refusal of the court to give the instructions asked for, and have brought the case here for review.
The only question argued in this court, and upon which our decision must depend, is the effect to be given respectively to the 107th section of the act of 1868,* and the 10th article of the treaty of 1866, between the United States and the Cherokee nation of Indians.
They are as follows:
“ Section 107. That the internal revenue laws imposing taxes on distilled spirits, fermented liquors, tobacco, snuff, and cigars, shall be construed to extend to such articles produced anywhere within the exterior boundaries of the United States, whether^ the same shall be within a collection district Or not.”
“ Article 10th. Every Cherokee Indian and freed person residing in the Cherokee nation shall have the right to sell any products of his farm, including his or her live stock, or any merchandise or manufactured products, and to ship and drive the same to market without restraint, paying any tax thereon which is now or may be levied 'by the United States on the quantity sold outside of the Indian territory.”
On behalf of the claimants it is contended that the 107th section was not intended to apply, and does not apply, to the country of the Cherokees, and that the immunities secured by the treaty are in full force there. The United States insist that the section applies with the same effect to the territory in question as to any State or other territory of the United States, and that to the extent of the provisions of the section the treaty is annulled.
*619 Considering the narrowness of the questions to-be decided, a remarkable wealth of learning and ability have been expended in their discussion. The views of counsel in this court have rarely been more elaborately presented. Nevertheless, the case seems to us not difficult to be determined, and to require no very extended line of remarks to vindicate the soundness of the conclusions at which we have arrived.
In The Cherokee Nation v. Georgia* Chief Justice Marshall, delivering the opinion of this court, said: “ The Indian territory is admitted to compose a part of the United States. In all our geographical treatises, histories, and laws it is so considered.” In The United States v. Rogers,† Chief Justice Taney, also speaking for the court, held this language: “It is our duty to expound and execute the law as we find it, and we think it too firmly and clearly established to admit of dispute that the Indian tribes residing within the territorial limits of the United States are subject to their authority, and where the country occupied by them is not within the limits of one of the States Congress may, by law, punish any offence committed there, no matter whether the offender be a white man or an Indian.” Both these propositions are so well settled in our jurisprudence that it would be a waste of time to discuss them or to refer to further authorities in their support. There is a long and unbroken current of legislation and adjudications, in accordance with them, and we are aware of nothing in conflict with either. The subject, in its historical aspect, was fully examined in Johnson v. Mclntosh.‡ In the 11th section of the act of the 24th of June, 1812, it was provided “ that it shall be lawful for any person or persons to whom letters testamentary or of administration shall have been or may hereafter be granted by the proper authority in any of the United States or the territories thereof to maintain any suit,” &c. In Mackey v. Coxe,§ it was held that the Cherokee country was a territory of the United States, within the meaning of this act. The 107th *620 section of the act of 1868 extends the revenue laws only as to liquors and tobacco over the country in question. Nowhere would frauds to an enormous extent as to these articles be more likely to be perpetrated if this provision were withdrawn. Crowds,- it is believed, would be lured thither by the prospect of illicit gain. This consideration doubtless had great weight with those by whom the law was framed. The language of the section is as clear and explicit as could be employed. It embraces indisputably the Indian territories. Congress not having thought proper to exclude- them, it is not for this court to make the exception. If the exemption had been intended it would doubtless have been expressed. There being no ambiguity, there is no room for construction. It would be out of place.* The section must be held to mean what the language imports. "When a statute is clear and imperative, reasoning ab inconvenienii is of no avail. It is the duty of courts to execute it.† Further discussion of the subject is unnecessary. We think it would be like trying to prove a self-evident truth. The effort may confuse and obscure but cannot enlighten. It never strengthens the pre-existing conviction.
But conceding these views to be correct, it is insisted that •the section cannot apply to the Cherokee nation because it is in conflict with the treaty. Undoubtedly one or the other must yield. The repugnancy is clear and they cannot stand together.
The second section of the fourth article of the Constitution of the United States declares that “ this Constitution and the laws of the United States which shall be made in pursuance thereof, and all treaties which shall be made under the authority of the United States, shall be tlie supreme law of the land.”
It need hardly be said that a treaty cannot change the Constitution or be held valid if it be in violation of that in *621 strument. This results from the nature and fundamental principles of our government. The effect of treaties and acts of Congress, when in conflict, is not settled by the Constitution. ' But the question is not involved in any doubt as to its proper solution. A treaty may supersede a prior act of Congress,* and an act of Congress may supersede a prior treaty.† In the cases referred to these principles were applied to treaties with foreign nations. Treaties with Indian nations within the jurisdiction of the United States, whatever considerations of humanity and good faith may be involved and require their faithful observance, cannot be more obligatory. They have no higher sanctity; and no greater inviolability or immunity from legislative invasion can be claimed for them. The consequences in all such cases give rise to questions which must be met by the political department of the government. They are beyond the sphere of judicial cognizance. In the case under consideration the act of Congress must prevail as if the treaty were not an element to be considered. If a wrong has been done the power of redress is with Congress, not with the judiciary, and that body, upon being applied to, it is to be presumed, will promptly give the proper relief.
Does the section thus construed deserve the severe strictures which have been applied to it? As before remarked, it extends the revenue laws over the Indian territories only as to liquors and tobacco. In all other respects the Indians in those territories are exempt. As regards those articles only the same duties are exacted as from our own citizens. The burden must rest somewhere. Revenue is indispensable to meet the public necessities. Is it unreasonable that this small portion of it shall rest upon these Indians ? The frauds that might otherwise be perpetrated there by others, under the guise of Indian names and simulated Indian ownership, is also a consideration not to be overlooked.
We are glad to know that there is no ground for any im *622 putation upon the integrity or good faith of the claimants who prosecuted this writ of error. In a case not free from doubt and difficulty they acted under a misapprehension of their legal rights.
Judgment affirmed.

 15 Stat. at Large, 167.

 5 Peters, 17.

 8 Wheaton, 574.

 4 Howard, 572.

 18 Howard, 103.

 United States v. Wiltberger, 5 Wheaton, 95.

 Mirehouse v. Rennel, 1 Clark & Finelly, 527; Wolff v. Koppel, 2 Denio, 372.

 Foster & Elam v. Neilson, 2 Peters, 314.

 Taylor v. Morton, 2Curtis, 454; The Clinton Bridge, 1 Walworth, 155