## ·VICKSBURG, SHREVEPORT & PACIFIC RAILROAD COMPANY *v.* DENNIS.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

Argued January 20, 1886.—Decided March 1, 1886.

A provision in a charter granted by a State to a railroad company, by which "the capital stock of said company shall be exempt from taxation, and its, road, fixtures, workshops, warehouses, vehicles of transportation and other appurtenances, shall be exempt from taxation for ten years after the completion of said road within the limits of this State," does not exempt the road, fixtures and appurtenances from taxation before such completion of the road.

The omission of taxing officers to assess certain property cannot control the duty imposed by law upon their successors, or the power of the legislature to tax the property, or the legal construction of a statute under which its exemption from taxation is claimed.

The original suit was brought by the sheriff, and *ex officio* collector of taxes, of the parish of Madison in the State of Louisiana, to recover the amount of taxes assessed, under general laws of the State, in 1877 and 1878 to the Vicksburg, Shreveport and Texas Railroad Company, and in 1880 to the Vicksburg, Shreveport and Pacific Railroad Company, upon thirty-four miles of railroad, with fixtures and appurtenances, in that parish.

The Vicksburg, Shreveport and Texas Railroad Company was incorporated on April 28, 1853, by a statute of Louisiana, to construct and maintain a railroad from a point in the parish of Madison on the Mississippi River opposite Vicksburg, westward by way of Monroe and Shreveport, to the line of the State of Texas.

Section 2 of that statute was as follows: "The capital stock of said company shall be exempt from taxation, and its road, fixtures, workshops, warehouses, vehicles of transportation, and other appurtenances, shall be exempt from taxation for ten years after the completion of said road within the limits of this State."

The eastern part of the railroad, from Vicksburg to Monroe,

about seventy-five miles, was completed before January 1, 1861; and the western part, from Shreveport to the Texas line, about twenty-five miles, was completed before January 1, 1862; leaving the central part, from Monroe to Shreveport, about one hundred miles, uncompleted. The further construction of the road was prevented and suspended during the civil war, and much of the track, bridges, stations and workshops was destroyed by the hostile armies.

Soon after the return of peace, a holder of four out of a large number of bonds secured by a mortgage executed by the corporation on September 1, 1857, of its railroad, property and franchises, commenced a suit in a court of the State of Louisiana, and obtained a decree for the sale of the whole mortgaged property, and it was sold under that decree.

Upon a suit afterwards brought by a very large number of the bondholders, in behalf of all, in the Circuit Court of the United States, that sale was, by a decree of this court at October term, 1874, annulled as fraudulent and illegal, and the railroad, property and franchises ordered to be sold for the benefit of the bondholders and other creditors of the corporation. *Jackson* v. *Ludeling*, 21 Wall. 616.

On December 1, 1879, they were sold pursuant to this decree, and purchased by a committee of the bondholders, who on the next day organized themselves with their associates into a corporation under the general statute of Louisiana of March 8, 1877, by the name of the Vicksburg, Shreveport and Pacific Railroad Company, and now claimed to be entitled under this statute to all the rights, powers, privileges and immunities of the Vicksburg, Shreveport and Texas Railroad Company, including its exemption from taxation.

In 1881 and 1882 the new corporation made contracts for the completion of the railroad between Monroe and Shreveport, and began to complete it; but it has not yet been completed.

The Supreme Court of Louisiana held, that the provision of the statute of 1853, exempting the railroad, fixtures and appurtenances "from taxation for ten years after the completion of said road," did not relieve the old corporation from taxation before the road was completed; and therefore gave judgment

for the plaintiff, without determining whether the new corporation had succeeded to the rights of the old one in this respect. 34 La. Ann. 954.

A writ of error was sued out by the defendant, and allowed by the Chief Justice of that court, because there was drawn in question the validity of a statute of, or an authority exercised under, the State, on the ground of its being repugnant to the Constitution of the United States, as impairing the obligation of contracts, and the decision was in favor of its validity.

*Mr. Edgar M. Johnson* for plaintiff in error. *Mr. George Hoadly*, and *Mr. Edward Colston* were with him on the brief.

*Mr. Thomas O. Benton* for defendant in error. *Mr. John S. Young* was with him on the brief.

MR. JUSTICE GRAY delivered the opinion of the court. After stating the facts as above reported, he continued:

In determining whether a statute of a State impairs the obligation of a contract, this court doubtless must decide for itself the existence and effect of the original contract (although in the form of a statute) as well as whether its obligation has been impaired. *Louisville & Nashville Railroad* v. *Palmes*, 109 U. S. 244, 256, 257, and cases cited; *Wright* v. *Nagle*, 101 U. S. 791, 794. But the construction given by the Supreme Court of Louisiana to the contract relied on in the present case accords not only with its own decision in the earlier case of *Baton Rouge Railroad* v. *Kirkland*, 33 La. Ann. 622, but with the principles often affirmed by this court.

In the leading case of *Providence Bank* v. *Billings*, 4 Pet. 514, Chief-Justice Marshall, speaking of a partial release of the power of taxation by a State in a charter to a corporation, said: " That the taxing power is of vital importance; that it is essential to the existence of government; are truths which it cannot be necessary to reaffirm." " As the whole community is interested in retaining it undiminished; that community has a right to insist that its abandonment ought not to be presumed, in a case in which the deliberate purpose of the State to abandon it

does not appear." "We must look for the exemption in the language of the instrument; and if we do not find it there, it would be going very far to insert it by construction." 4 Pet. 561–563.

In *Philadelphia & Wilmington Railroad* v. *Maryland*, 10 How. 376, Chief-Justice Taney said: "This court on several occasions has held, that the taxing power of a State is never presumed to be relinquished, unless the intention to relinquish is declared in clear and unambiguous terms." 10 How. 393.

In the subsequent decisions, the same rule has been strictly upheld and constantly reaffirmed, in every variety of expression. It has been said that "neither the right of taxation, nor any other power of sovereignty, will be held by this court to have been surrendered, unless such surrender is expressed in terms too plain to be mistaken;" that exemption from taxation "should never be assumed unless the language used is too clear to admit of doubt;" that "nothing can be taken against the State by presumption or inference; the surrender, when claimed, must be shown by clear, unambiguous language, which will admit of no reasonable construction consistent with the reservation of the power; if a doubt arise as to the intent of the legislature, that doubt must be solved in favor of the State;" that a State "cannot by ambiguous language be deprived of this highest attribute of sovereignty;" that any contract of exemption "is to be rigidly scrutinized, and never permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require;" and that such exemptions are regarded "as in derogation of the sovereign authority and of common right, and therefore not to be extended beyond the exact and express requirement of the grants, construed *strictissimi juris.*" *Jefferson Branch Bank* v. *Skelly,* 1 Black, 436, 446; *Gilman* v. *Sheboygan,* 2 Black, 510, 513; *Delaware Railroad Tax,* 18 Wall. 206, 225, 226; *Hoge* v. *Railroad Co.* 99 U. S. 348, 355; *Southwestern Railroad* v. *Wright,* 116 U. S. 231, 236; *Erie Railway* v. *Pennsylvania,* 21 Wall. 492, 499; *Memphis Gaslight Co.* v. *Shelby Taxing District,* 109 U. S. 398, 401; *Tucker* v. *Ferguson,* 22 Wall. 527, 575; *West Wisconsin Railway* v. *Supervisors,* 93 U. S. 595, 597;

*Memphis & Little Rock Railroad* v. *Railroad Commissioners,* 112 U. S. 609, 617, 618.

It is argued in support of this writ of error, that as the exemption from taxation of the capital stock was unqualified and perpetual, and began at the very moment of the creation of the corporation, the further exemption of the railroad and its appurtenances, conferred in the same section, was intended to begin at the same moment, although limited in duration to ten years after the completion of the road; and that the legislature, while exempting the railroad from taxation for ten years after its completion, could not have intended to subject it to taxation before its completion and while its earnings were little or nothing.

On the other hand, it is argued that the consideration of the exemption from taxation, as of all the franchises and privileges granted by the State to the corporation, was the undertaking of the corporation to prosecute to completion within a reasonable time the work of building the whole railroad from the Mississippi to the Texas line; that one reason for defining the exemption of the railroad and its appurtenances from taxation as "for ten years after the completion of said road," without including any time before its completion, was to secure a prompt execution of the work, and to prevent the corporation from defeating the principal object of the grant, and prolonging its own immunity from taxation, by postponing or omitting the completion of a portion of the road; and that the State had never allowed a similar exemption to take place, except after a railroad had been entirely finished; and this argument is supported by the opinions of the Supreme Court of Louisiana in *State* v. *Morgan,* 28 La. Ann. 482, 491; and in the case at bar, 34 La. Ann. 954, 958.

Each of these arguments rests too much on inference and conjecture to afford a safe ground of decision, where the words of the statute creating the exemption are plain, definite and unambiguous.

In their natural and their legal meaning, the words "for ten years after the completion of said road" as distinctly exclude the time preceding the completion of the road, as the time succeeding the ten years after its completion. If the legislature

· had intended ·to limit the end only, and ňot the·beginning, 'of ·the exemption, its purpose could have been easily expressed by saying " until " instead of " for," so as to read " until·ten years after the completion," leaving the exemption to begin immediately upon the granting·of the charter.

To hold that the words of ·exemption actually used by the legislature include the time before the completion .of the road would be to insert. by construction what is not to be fouńd in the language of the contract; to presume an intention, which the legislature has not manifested in clear and unmistakable terms,· to surrender the taxing power; and to go against the uniform current of the decisions of this court upon the subject, as shown by the cases above referred to.

The omission of the taxing officers of the State in previous years to assess this property cannot control the duty imposed by law upon their successors, or the power of the legislature, or the legal construction of the statute under which the exemption is claimed.

In the case of *Morgan* v. *Louisiana*, 93 U. S. 217, affirming the decision in 28 La. Ann. 482, neither this court nor the Supreme Court of Louisiana expressed any opinion upon the question now before us, because both courts held that, the sale of. the railroad in that case having taken place before the passage of the statute· of 1877, whatever· rights were conferred by· a similar clause of exemption had not passed to the purchasers.

*Judgment affirmed.*

Mr. Justice Field, with whom concurred The Chief Justice, Mr. Justice Miller, and Mr. Justice Bradley, dissenting.

I am obliged to dissent from the judgment in this case. I agree with the majority of the court in all that is said in the opinion as to the construction of statutes, which are alleged to exempt from the taxing power of the State property within its jurisdiction. Where there is a reasonable doubt as to their · construction, whether or not they create the exemption, it should be solved in favor of the State. But here it does not seem to me there can be any such doubt. The statute in ques-

tion declares that the capital stock of the company "shall be exempt from taxation, and its roads, fixtures, workshops, warehouses, vehicles of transportation, and other appurtenances, shall be exempt from taxation, for ten years after the completion of said road within the State." This exemption was designed to aid the road, and was, therefore, much more needed during its construction than when completed. It seems like a perversion of the purpose of the statute to hold that it intended to impede by its burden the progress of the desired work, and relieve it of the burden only when finished. The enterprise is to be nursed, according to the majority of the court, not in its infancy, but when successfully carried out and needs no support.

I am authorized to say that the CHIEF JUSTICE, MR. JUSTICE MILLER and MR. JUSTICE BRADLEY concur with me in this dissent.