MARY BLACKBIRD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 23272. Promulgated January 14, 1929.

*T. J. Leahy, Esq.*, for the petitioner.
*Shelby S. Faulkner, Esq.*, for the respondent.

OPINION.

STERNHAGEN: This is one of three proceedings brought to test the validity of numerous determinations, made by the Commissioner, under the Revenue Act of 1926, of deficiencies in income tax in

respect of individual members of the Osage Tribe of Indians. This petitioner is a full blood member of the tribe without a certificate of competency; Henry Chouteau, whose case is separately considered, had a certificate of competency; and Amarillis D. Pettit, whose case is also separately considered, is not a member of the tribe but by reason of marriage to a member she by inheritance derives income through the Indian tribe. Counsel for petitioner rests all three cases upon the same argument and treats them as indistinguishable in law, notwithstanding differences in fact. Each case has been submitted upon a stipulation of all the facts. This stipulation in the instant case is as follows:

It is hereby stipulated and agreed by and between the above-named petitioner and the above-named respondent that the following is a true and correct statement of the facts involved in this controversy; and that the Board of Tax Appeals may accept the same as a true, correct, and complete statement of the facts involved, in conjunction with the petition and answer filed in this case, and render judgment thereon.

(1) The petitioner, Mary Blackbird, is a full blood member of the Osage Tribe of Indians, duly enrolled and allotted as such under the Act of Congress of June 28, 1906, (34 Stat. at L., 539), and has never received a certificate of competency as provided under said Act of Congress.

(2) Mary Blackbird is the owner, by inheritance from another full blood member of the Osage Tribe of Indians, who was duly enrolled and allotted as such, of one-third share or allotment, and during the years in question she was the owner of, and in possession of, one and one-third shares or allotments, representing her own share or allotment which was allotted to her, and one-third share which she received by inheritance.

(3) During the year 1920 she received as income from her own share or allotment as a member of the Osage Tribe of Indians, from bonuses and royalties received by said tribe, $9,900.00, and from the one-third share or allotment which she owned as an inheritance, $3,300.00; and that she paid as income tax for said year the sum of $682.08.

(4) For the year 1921 she received as income from her own share or allotment, from bonuses and royalties received by the Osage Tribe of Indians, the sum of $6,100.00, and from the inherited one-third share or allotment that was owned by her, $2,033.34; and that she paid as income tax for said year the sum of $221.29.

(5) The income received by the petitioner, as shown by each of said years, designated as rents, in addition to the amount of income received from the shares or allotments owned by the petitioner from bonuses and royalties, was income from the lands allotted to the petitioner under the Act of Congress of June 28, 1906, supra, and income from the lands inherited by her from another member of the Osage Tribe of Indians, and which were allotted to such other member under the said Act of Congress of June 28, 1906. She received as income from what is designated by said Act of Congress as her homestead allotment for each of said years the sum of $480.00, and the balance of the income as rents came from what is designated as her surplus allotments and from the lands inherited by her, as above set forth, for each of said years. The items designated as interest on trust funds was interest on funds held in trust for her by the United States under the Act of Congress of June 28, 1906, supra.

(6) All of said income, except what is stated in paragraph five above as rents from her lands and interest on trust funds, was income from her pro rata part of the income of the Osage Tribe of Indians received from oil and gas mineral leases, made by said tribe with the approval of the Secretary of the Interior under the said Act of Congress of June 28, 1906, upon part of the lands originally bought for the Osage Tribe of Indians and held in trust for said tribe by the United States; said lands being purchased from the Cherokee Tribe of Indians and deeded to the United States to be held in trust by it for the said Osage Tribe of Indians. A true copy of the aforementioned deed, marked Exhibit "A", is attached hereto and made a part hereof.

(7) The lands aforesaid were purchased from the Cherokee Tribe of Indians with funds theretofore realized from the sale of lands of the Osage Indians located in the State of Kansas. The funds aforementioned held in trust for her by the United States were her allotment of the proceeds from the sale of Kansas lands not used in purchasing the lands from the Cherokee Tribe of Indians.

(8) The parties agree that the Board may take judicial notice of all pertinent statutes and treaties.

(9) The member of the Osage Tribe of Indians from whom the petitioner inherited said allotment or share as above set forth was a full blood member of said Osage Tribe of Indians, and did not have a certificate of competency.

(10) The computations as to amounts and depletion allowed, made by respondent, as shown by the notice of deficiency, are correct.

To this stipulation is appended a copy of the deed of June 14, 1883, from the Cherokee Nation to the United States in trust for the Osage and Kansas Indians, of certain lands west of the Arkansas River.

The references in subdivision (5) of the stipulation to certain amounts designated as rents and interest are apparently to the designations appearing in the Commissioner's notice of deficiency appended to the petition. This shows for 1920:

| | |
|---|---:|
| Royalties | $6,533.34 |
| Bonus | 6,666.65 |
| Interest on trust fund | 100.0C |
| Rents on land | 1,272.30 |
| Miscellaneous | 10.29 |
| | 14,582.58 |
| Less depletion allowed | 2,746.88 |
| Balance | 11,835.70 |

Less:

| | | |
|---|---:|---:|
| Interest paid | $200.00 | |
| Taxes paid | 143.21 | |
| Contributions | 75.00 | |
| | | 418.21 |

| | |
|---|---:|
| Taxable income | 11,417.49 |
| Less personal exemption | 1,000.00 |
| Balance subject to normal tax | 10,417.49 |
| Amount subject to tax at 4 per cent | 4,000.00 |

Balance subject to tax at 8 per cent_____ $6,417.49
Amount of tax at 4 per cent normal tax_____ 160.00
Amount of tax at 8 per cent normal tax_____ 513.40
Surtax at graduated rates on $11,417.49_____ 166.70

Total_____ 840.10
Tax previously assessed_____ 622.08

Deficiency in tax_____ 218.02

Petitioner, under section 284 (e), Revenue Act 1926, claims overpayment of $622.08 and $221.29 already paid for 1920 and 1921. The effect of this would be to leave petitioner altogether free from income tax, although in argument her counsel disclaims exemption, concedes that anything " which is the result of labor, industry, intelligence, or manipulation, is subject to tax," and contends only that income received by a member of the tribe by reason of such membership is not within her taxable net income. Such income takes the form, in this case, of the petitioner's distributed shares of bonuses and royalties from mineral leases made in behalf of the tribe, interest on trust funds held by the United States for the members of the tribe and rents from her allotted lands.

The deficiency was determined against the petitioner as an individual in respect to the amounts which she actually received. No deficiency has been asserted against the tribe as a group and this proceeding does not, except in the course of argument, present the question of the liability of the tribe as a group.

The outline of petitioner's argument is as follows: The tribe is not among those required to file income-tax returns; the income received by the tribe may not be taxed under the Constitution, and Congress has not attempted to tax it, and therefore such income is not taxable when distributed to the individual members of the tribe.

In *Leah Brunt, Administratrix*, 5 B. T. A. 134, the Board decided that a member of the Osage Tribe was properly taxed upon amounts distributed to him as his share of sale profits and royalties from oil leases. The exercise by Congress of the power to tax the Indian was said by the Board to be found in the general language of the revenue act taxing all individuals. The Indian is entitled to the same individual exemption as any other individual, as provided in section 216, and, since the tax is only imposed upon those whose income is by Congress regarded as sufficient to indicate ability to pay, irrespective of citizenship, there is no apparent reason to impute to Congress an intention to relieve the Indian of a tax burden borne by all others.

In considering the doctrine asserted, that a general taxing statute does not reach the Indian because traditionally matters affecting him are always embodied in special legislation, the Board found that *The Cherokee Tobacco*, 11 Wall. 616, held the Indian subject to a

general excise tax. Since this was the only occasion in which the doctrine had been considered in its application to the matter of taxation and the court upheld the tax, this decision was treated as more significant than those in which, as to other matters, it had been clearly stated that specific legislation alone affected Indian affairs. The authority of *The Cherokee Tobacco* case lay in the fact that it recognized that the burden of a Federal tax imposed by a general statute might lawfully be placed upon a member of an Indian tribe. The nature of the tax as an excise and its express applicability throughout collection districts were said by the Board to be insufficient to detract from the force of the holding that general tax legislation was applicable to an Indian notwithstanding the views of the dissenting justices to the contrary.

Our attention is now specifically called to *United States* v. *Forty-three Gallons of Whiskey*, 108 U. S. 491, which it is said reversed *The Cherokee Tobacco*. We think it has no such effect. So far as it deals with the power or policy to tax the Indian, the *Tobacco* decision upheld the tax. This was in the December Term, 1870. In the October Term, 1882, the court decided in the *Whiskey* case, that one who had paid the special tax for selling liquor was nevertheless subject to forfeiture for violating the law against introducing liquor among the Indians. There is no direct relation between the issue decided in the *Tobacco* case and that presented in the *Whiskey* case. The court held that the *Tobacco* case was not *authority against* its conclusions in the *Whiskey* case, and that it only disposed of the *Tobacco* case. This is manifestly not overruling the earlier case, but leaving it with all its authority as a precedent for the disposition of a similar issue. That it was so regarded is shown by the later opinion of the Attorney General, 18 Ops. Atty. Gen. 66, advising the Government to continue to collect tobacco excise taxes from the Indians.

*Choate* v. *Trapp*, (1911) 224 U. S. 665, is also cited by petitioner as reversing *The Cherokee Tobacco*. In our opinion, there is nothing said or implied in the *Choate* case to justify the belief that the *Tobacco* case would have been decided differently upon further consideration. The *Choate* case held that the tax exemption on land allotted to the Choctaw and Chicksaw Indians under the Curtis Act of 1898 was a contractual right which could not be invaded by the State of Oklahoma under an alleged power to tax the property. The *Tobacco* case is not referred to in the opinion and we see no relation between the cases.

We remain of opinion, therefore, that *The Cherokee Tobacco* is an instance, approved by the Supreme Court, of a Federal tax imposed by the United States upon the Indians through general legislation applicable to all, and that it precludes the view that the income of the

Indians is not reached by the general Revenue Acts of 1918 and 1921, because it is not specifically and expressly mentioned.

The argument pressed by this petitioner is somewhat different from that in the *Brunt* case. This petitioner concedes that her membership in the Indian tribe does not give her exemption from all income tax and that as an individual person she is a taxpayer under the Act. The argument is, however; that such of her income as comes out of the royalties and bonuses received by the United States in trust for the tribe is not to be included in her gross income under the tax law. In effect, she contends that, despite the broad language of the statute, by which gross income embraces all income of whatever kind from any source whatever (section 213), and which has been construed as including everything which Congress has the power to include, *Eisner* v. *Macomber*, 252 U. S. 189; *Irwin* v. *Gavit*, 268 U. S. 161, there is an implied restriction on the power of Congress and an implied limitation on its exercise which excludes such distributions from taxable income. This is said to be because the tribe is not taxable, and, hence, any income derived through the tribe carries an exemption into the hands of the individual members to whom the royalties are distributed.

Since the Government has not asserted and does not here contend for any liability of the tribe, we do not determine the rights of the tribe. But such freedom from liability, if it exist, does not rest in any impersonal right attaching to the income itself. Like income of various other sorts, its tax incidents in the hands of a predecessor have no relation to a succeeding recipient of the identical amount. It seems to us that even if we were to regard the United States as such a trustee of income for the tribe as is contemplated by section 219 of the Revenue Act, but nevertheless tax free as postulated, still the law would not extend the exemption to the beneficiary of the trust when this distributive share comes to him. See *Smietanka* v. *First Trust & Savings Bank*, 257 U. S. 602.

The question then is whether the income from oil and mineral leases is tax free by reason of its relation to the land under which lies the oil or mineral leased. The essence of this argument is the same as that of *Heiner* v. *Colonial Trust Co.*, 275 U. S. 232. Income from Indian lands is not, by reason of such source, tax free. This was held clearly in response to the lessee who claimed through the Indian. As to the Indian himself, it was left undecided whether there is a basis, however narrow, to support his exemption, but it seems clear that such possible exemption would not arise from the property as the source of the income, but would be attributable personally to the Indian. Thus we are brought back to the personal exemption considered and denied in the *Brunt* case. We have also considered the more recent opinions in *Richards* v. *United States*,

21 Fed. (2d) 94; *United States* v. *Richards*, 27 Fed. (2d) 284, certiorari denied, 49 Sup. Ct. 29, from which it appears that the statutory restrictions as to refunds have been imposed upon the Indian by the general language of the revenue acts.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

LANSDON, MORRIS, and GREEN dissent for the reasons set forth in the dissenting opinion in *Leah Brunt, Administratrix*, 5 B. T. A. 134.

*T. J. Leahy, Esq.*, for the petitioner.
*Shelby S. Faulkner, Esq.*, for the respondent.