LUCINDA PITMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18493. Promulgated September 30, 1931.

*J. D. Simms, Esq.,* for the petitioner.
*Bruce A. Low, Esq.,* for the respondent.

OPINION.

Love: The ultimate question involved in this proceeding is what portion, if any, of the cash bonus of $132,500 is taxable income to petitioner in 1922. The respondent determined that $36,370 was taxable, but now contends that $121,750 is taxable and has moved for an increased deficiency.

We do not have before us the respondent's computation showing how he arrived at the amount of $36,370, but that fact is not now material to the present disposition of the case, since the respondent now contends that $121,750 of the cash bonus is taxable instead of $36,370. The respondent bases his contention for the larger amount on our decision in *Murphy Oil Co.*, 15 B. T. A. 1195, wherein we held that a cash bonus payment by the lessee for an oil and gas lease represents taxable income and, having no relation to exhaustion of resources, does not reduce the depletable base of the lessor, which

holding is contrary to article 215 of the respondent's Regulations 62, as amended by T. D. 3938.

As set out in our findings, the $132,500 was a cash bonus paid to petitioner in 1922 by three lessees as part consideration for certain oil and gas leases covering the 160 ac. of which her son was seized and possessed on the date of his death. In the original allotment deeds given under Act of Congress approved March 1, 1901 (31 Stat. 861), 40 acres of the 160 acres were designated as a "homestead" and the balance of 120 acres was known as "surplus lands." The cash bonus of $132,500 was paid to petitioner by lessees of the two respective classes of lands, as follows:

| | |
|---|---|
| Homestead (40 acres) | $21,500 |
| Surplus lands (120 " ) | 111,000 |
| Total | 132,500 |

The respondent concedes that petitioner inherited from her son, Robert Pitman, Jr., one-half of the above allotment of 160 acres, and that by reason of such inheritance, one-half of the cash bonus of $21,500 applicable to the homestead, or $10,750, is exempt from taxation under the laws applicable thereto, leaving $121,750 ($132,500 minus $10,750) subject to tax under our decision in *Murphy Oil Co.*, *supra.* The respondent contends that the remaining one-half of the 160-acre allotment was acquired by petitioner by purchase from her divorced husband; that all restrictions had been removed from the surplus lands prior to the death of Robert Pitman, Jr.; that where an allotment once becomes nonrestricted, it forever afterwards remains nonrestricted; that the one-half of the homestead which respondent contends petitioner purchased, became nonrestricted when it was inherited, as respondent contends, by a white person, namely, Robert L. Pitman, Sr.; and that, under section 4 of the Act approved May 27, 1908 (35 Stat. 312), "* * * all land from which restrictions have been or shall be removed shall be subject to taxation * * *."

On the other hand, the petitioner has assumed without contending that the leases executed on or about March 7, 1922, were sales of property and that the gain or loss resulting therefrom should be determined in accordance with section 202 of the Revenue Act of 1921, and article 1563 of Regulations 62. She contends that she inherited the entire allotment of 160 acres from her deceased son, Robert Pitman, Jr.; that the basis for determination of gain or loss is the value of the property when inherited; that this value was $159,120.35; and that comparing that amount with the $132,500 received, there was no taxable income. As an alternative, she again contends that she inherited the entire allotment of 160 acres, and,

being a full-blood Indian, the entire inheritance is restricted in her hands and is free from tax.

We, however, do not regard it necessary for a proper disposition of this proceeding to determine the questions whether petitioner inherited or purchased the one-half of the allotment which respondent contends she purchased, or whether the said allotment was or was not restricted in her hands. We think the cash bonuses received from the leases in connection with both the homestead and surplus lands are subject to the Federal income tax, but for reasons different from those given by the respondent.

Sections 210 and 211 of the Revenue Act of 1921, levy a tax upon the " net income of every individual." Section 212 defines net income as gross income less the deductions. Section 213 (a) includes within the term gross income " gains or profits and income derived from any source whatever." The bonus money was in the nature of royalties and hence income. *Work* v. *Mosier*, 261 U. S. 352, 357. We know of no Federal statute exempting such income from Federal taxation. The following remarks by the United States Supreme Court in the recent case of *Choteau* v. *Burnet*, 283 U. S. 691, are apposite here:

> The language of Sections 210 and 211 (a) (Note No. 9) subjects the income of " every individual " to tax. Section 213 (a) (Note No. 10) includes income " from any source whatever." The intent of Congress was to levy the tax with respect to all residents of the United States and upon all sorts of income. The act does not expressly exempt the sort of income here involved, nor a person having petitioner's status respecting such income, and we are not referred to any other statute which does.

We are not unaware of the decisions of the Circuit Court of Appeals for the Tenth Circuit in *Mary Blackbird* v. *Commissioner*, 38 Fed. (2d) 976, and the Federal District Court for the Western District of Oklahoma in *United States* v. *Homeratha*, 40 Fed. (2d) 305. The latter case was decided upon the authority of the former. The *Blackbird* case involved " a restricted full-blood member of the Osage ·Tribe of Indians." The Circuit Court, in reversing this Board's opinion, reported at 14 B. T. A. 1247 based its decision upon three principal grounds, namely, (1) that to tax a ward of the Government " would be contrary to the almost unbroken policy of Congress in dealing with its Indian wards and their affairs "; (2) that general acts of Congress are not applicable to Indians unless expressly made so; and (3) that whatever value the *Cherokee Tobacco Case*, 11 Wall. 616, had as a precedent in support of upholding the tax " seems to have been nullified by what is said in *United States* v. *Forty-three Gallons of Whiskey*, 108 U. S. 491." The second proposition was developed by the court mainly in support of the first. Yet on the same day, the same court in *Choteau* v. *Commissioner*, 38

Fed. (2d) 976, recognized what must at least be regarded as an exception to the proposition that general acts of Congress are not applicable to " Indians " unless expressly made so, by holding that where an Osage Indian had received his certificate of competency issued under the authority of paragraph 7 of section 2 of the Act of June 28, 1906 (34 Stat. 539, 542), he was then subject to the Federal income tax. The *Choteau* decision was affirmed by the United States Supreme Court (already referred to herein) and we again quote therefrom as follows:

But it is said that as to the income here taxed petitioner is exempt because of his status as an Indian. This assertion requires a reference to the policy of the government with respect to the Indians. No provision in any of the treaties referred to by counsel has any bearing upon the question of the liability of an individual Indian to pay tax upon income derived by him from his own property. The course of legislation discloses that the plan of the government has been gradually to emancipate the Indian from his former status as a ward; to prepare him for complete independence by education and the gradual release of his property to his own individual management. This plan has included imposing upon him both the responsibilities and the privileges of the owner of property, including the duty to pay taxes.

We recognize, of course, that the facts in the *Choteau* case differ from the facts in the instant case in so far that Henry Choteau had received a certificate of competency and was nonrestricted as to his surplus lands, whereas petitioner contends she was restricted as to her surplus lands by section 9 of the 1908 Act (35 Stat. 312) in that she had to have any conveyance of any interest in her land approved by the proper court. But Choteau was a restricted Indian as to his homestead. We have searched the United States Statutes at Large pertaining to the Five Civilized Tribes (of which petitioner was a member) and have been unable to find any provision similar to paragraph 7, section 2, of the Act of June 28, 1906 (34 Stat. 539, 542), relating to the granting of certificates of competency to the Osages. Petitioner was " declared to be a citizen of the United States " by section 6 of the Act of February 8, 1887 (24 Stat. 388, 391), as amended by Act of March 3, 1901 (31 Stat. 1447). The Osages were not declared to be citizens until 1921. See sec. 3, ch. 120, Act of March 3, 1921 (41 Stat. 1249, 1250). But, as was said in *Tiger* v. *Western Investment Co.*, 221 U. S. 286, " there is nothing in citizenship incompatible with this guardianship over the Indian's lands inherited from allottees." So the only material difference between petitioner and Choteau is that Choteau was not restricted as to his surplus lands and petitioner contends she was restricted as provided in section 9, *supra*. We do not think that this difference alone should exclude petitioner from tax. " The intent to exclude must be definitely expressed, where, as here, the general language of the act

laying the tax is broad enough to include the subject matter. *Heiner* v. *Colonial Trust Co.*, 275 U. S. 232; *Shaw* v. *Oil Corporation, supra.*" (*Choteau* v. *Burnet, supra.*)

In *Heiner* v. *Colonial Trust Co.*, 275 U. S. 232, the Supreme Court held that a non-Indian lessee of restricted Indian lands was taxable on the income derived from such leases. The argument was made by counsel for the lessee in that case that to tax the lessee would have an adverse economic effect upon the Government's wards; that general acts of Congress are not applicable to the Indians where to apply them would affect the Indians adversely; and that Congress can not be held to have intended by the general provisions of the revenue acts to tax the incomes of the Indians themselves, nor by taxing that of their lessees to do itself what the States are forbidden to do. In deciding in favor of the tax, the Supreme Court said:

The power of the United States to tax the income is undoubted. * * * The disposition of Congress has been to extend the income tax as far as it can to all species of income, despite immunity from state taxation. * * *

Assuming that the Indians are not subject to the income tax, as contended, the fact that they are wards of the government is not a persuasive reason for inferring a purpose to exempt from taxation the income of others derived from their dealing with the Indians. Tax exemptions are never lightly to be inferred (*Vicksburg, etc. R. R.* v. *Dennis*, 116 U. S. 665, 668, 6 S. Ct. 625, 29 L. Ed. 770; *Philadelphia & Wilmington R. R.* v. *Maryland*, 10 How. 376, 393, 13 L. Ed. 461), *and we think any implication of an exemption of the income of the Indians themselves, if made, must rest on too narrow a basis* to justify the inclusion of the income of other persons merely because the statute, if applied as written, may have some perceptible economic effect on the Indians. [Italics supplied.]

Referring to the third principal ground of the Circuit Court's decision in the case of *Mary Blackbird* v. *Commissioner, supra*, the only reference to the *Tobacco* case by the Supreme Court in the *Whiskey* case was in the last paragraph of its opinion, which reads as follows:

The case of the *Cherokee Tobacco Tax*, 11 Wall. 616, cannot be treated as authority against the conclusion we have reached. The decision only disposed of that case, as three of the judges of the court did not sit in it and two dissented from the judgment pronounced by the other four.

See also *Leah Brunt, Administratrix*, 5 B. T. A. 134, 145, and *Mary Blackbird*, 14 B. T. A. 1247, 1251.

A further comparison of the facts in the instant case with those in the *Choteau* case discloses that they are alike in that no Federal restriction was placed upon the income of either petitioner or Choteau after it was paid to them. Although petitioner may have been restricted by section 9 as to her *conveyance* of *any interest* in her *land*, we know of no Federal statute and have been referred to

none which restricts her in any manner whatsoever as to her ownership in and enjoyment of the $132,500 cash bonus received. In the *Choteau* case the Supreme Court said:

His share of the royalties from oil and gas leases was payable to him, *without restriction upon his use of the funds so paid.* * * * In the process of gradually changing the relation between the Indian and the government he has been, with respect to the income in question, fully emancipated. (Compare *United States* v. *Waller, supra.*) It is true, as petitioner asserts, that as to his homestead he still remains a restricted Indian. But this fact is only significant as evidencing the contrast between his qualified power of disposition of that property *and his untrammeled ownership of the income* in controversy. *The latter was clearly beyond the control of the United States.* The duty to pay it into petitioner's hands, *and his power to use it after it was so paid,* were absolute. *Work* v. *Mosier*, 261 U. S. 352; *Work* v. *Lynn*, 266 U. S. 161. The claim that with respect to this income the petitioner was restricted, and therefore exempt from tax laid by sections 210 and 211 (a) must fail. [Italics supplied.]

It may be pointed out that there is no Federal statute that exempts any *Indian*, of any class, from taxation. The exemptions that are made pertain to and run with certain allotments of land under certain circumstances and conditions. In so far as the statutes are concerned, an Indian may own land that is exempt from taxation, and yet if he own cattle or other personal property, or even land that is not exempt, he may be taxed in the same way as other citizens are taxed.

Since oil royalties, and especially bonuses, are held to be income, and not a part of the realty (as we will later point out below), no authority may be found in the statutes for holding such income exempt.

It may be true that the State of Oklahoma is prohibited from levying a tax upon either petitioner's homestead or surplus lands. See section 16, Act approved June 30, 1902 (32 Stat. 500); and *Marcy* v. *Seminole County*, 45 Okla. 1; 144 Pac. 611. But it does not follow that by reason of that fact the Federal Government can not tax the income received from such lands. Once more we quote from *Choteau* v. *Burnet, supra*, as follows:

It is further insisted that since the royalties are not taxable, so long as they remain in the hands of the government in trust for the tribe and undistributed to members, income derived by the individual member from this fund *comes from an exempt source and must therefore also be held to be exempt.* (See *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429; 158 U. S. 601.) Royalties received by the government from mineral leases of Indian lands have been held to be beyond a state's taxing power, (*Gillespie* v. *Oklahoma*, 257 U. S. 501; *Shaw* v. *Oil Corporation, supra*) on the ground that, while in the possession of the United States they are a federal instrumentality, to be used to carry out a governmental purpose. *It does not follow, however, that they can not be subjected to a federal tax.* [Italics supplied.]

It may also be true that expressions may be found in some of the decisions of some of the courts indicating that it is not the policy of the Government to tax its own wards, but certainly it may not reasonably be contended that the Government is under any obligation, morally or legally, to refrain from collecting a tax on such income, simply because the recipient of that income is its ward— its ward by reason of a voluntary assumption of the duties and responsibilities of a guardianship for the purpose of protecting such ward from exploitation by designing and avaricious persons.

In reaching the conclusion that the $132,500 bonus received from the leases in connection with both the homestead and surplus lands is subject to the Federal income tax, we appreciate, as previously indicated herein, that there are expressions in *Blackbird* v. *Commissioner*, *supra*, that might incline to support an opposite holding, yet in view of our references to the *Choteau* decision, of which decision the Circuit Court of Appeals did not have the advantage, we believe that the mere fact that petitioner may have been restricted in her conveyance of any interest in her lands should not have the effect of exempting from the income tax either petitioner as an individual or the oil and gas royalties she derived from the leasing of such lands, which *income* was subject to no Federal restrictions in her hands whatsoever. While it is true that the United States Supreme Court has never specifically passed upon the exact question here presented, we think its expressions in *Heiner* v. *Colonial Trust Co.*, *supra*, and *Choteau* v. *Burnet*, *supra*, lead almost inevitably to support the conclusion here reached.

Having decided that the bonuses received from the leases in connection with both the homestead and surplus lands are subject to the Federal income tax, we shall now consider the remaining contentions of the parties as set out at the beginning of this opinion.

Petitioner's contention that the taxable amount, if any, of the cash bonus of $132,500 should be determined in accordance with section 202 of the Revenue Act of 1921, is based upon the assumed premise that the instruments executed on or about March 7, 1922, were "sales" of property. The courts and the Board hold such instruments to be oil and gas leases and not sales of property. See *Henry L. Berg et al.*, 6 B. T. A. 1287; affd., 33 Fed. (2d) 641; certiorari denied, 280 U. S. 598; *John T. Burkett*, 7 B. T. A. 560; affd., 31 Fed. (2d) 667; certiorari denied, 280 U. S. 565; *Bankers Pocahontas Coal Co.*, 18 B. T. A. 901, and cases therein cited; *Henry Harmel*, 19 B. T. A. 376; *Hirschi* v. *United States*, 67 Ct. Cls. 637; *W. P. Ferguson*, 20 B. T. A. 130; and *Alexander* v *King*, 46 Fed. (2d) 235; certiorari denied, 283 U. S. 845. Petitioner's assumed

premise was, therefore, erroneous. The instruments were leases and not sales of capital assets. See *contra*, however, *Ferguson* v. *Commissioner*, 45 Fed. (2d) 573. It follows that petitioner's contention that no portion of the cash bonus is taxable because it was less than the value of the allotment when inherited by petitioner, must be denied.

The cash bonus, being subject to taxation as set forth above, we hold that in accordance with *Murphy Oil Co.*, *supra*, pages 1202 and 1203, the entire amount of the $132,500 received by petitioner from leases in connection with the surplus lands in 1922 is taxable income for that year. See also *Mary Alphin et al.*, 21 B. T. A. 1101. But since the respondent, in his motion for an increased deficiency made under the authority of section 274 (e) of the Revenue Act of 1926, moved "that the Board in its final decision and order determine that the petitioner's taxable income from the bonus of the 160-acre tract for 1922 was $121,750.00," we hold that in redetermining the deficiency under Rule 50, only $121,750 of the cash bonus of $132,500 be included in petitioner's taxable income. We do not have jurisdiction to determine a greater deficiency than that for which a claim is asserted by the respondent. Section 274 (e), *supra*.

The deficiency should be redetermined by including, in petitioner's taxable income, $121,750 of the cash bonus of $132,500, instead of the $36,370 included by the respondent in his deficiency notice.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*