GUARANTY TRUST COMPANY OF NEW YORK, EXECUTOR, ESTATE OF JAMES GORDON BENNETT, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 62739, 69550. Promulgated August 7, 1934.

*Marion N. Fisher, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

### OPINION.

GOODRICH: Respondent determined deficiencies in income tax of $13,963.09 for 1929 and $14,339.94 for 1930, resulting from his refusal to allow as deductions from the estate's income for these years $94,500 and $92,694.14, respectively, being the amounts paid pursuant to will to various annuitants, except decedent's widow. In these proceedings, which upon motion were consolidated, petitioner assails respondent's determinations as erroneous on the ground that the payments to the annuitants should be deducted from the income of the estate, under the provision of section 162 (a), Revenue Act of 1928.[1]

The parties, by counsel, submitted a stipulation of facts, which we adopt as our findings, but which we do not here set out in full, since the requirements of this report may be served by a briefer statement.

James Gordon Bennett, a citizen of New York, died testate, on May 14, 1918. By his will (we are concerned only with his American will, of which this petitioner is the surviving executor) he provided

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (n)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (n), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance, or operation of a public cemetery not operated for profit.

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*    \*    \*    \*    \*    \*    \*

(n) *Charitable and other contributions.*—In the case of an individual, contributions or gifts made within the taxable year to or for the use of:

\*    \*    \*    \*    \*    \*    \*

(2) any corporation, or trust, or community chest fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

\*    \*    \*    \*    \*    \*    \*

an annuity of $50,000 to his widow, made a number of specific bequests, and directed the payment to 19 other persons of certain annuities aggregating $98,000. No limitation was made respecting the funds from which the annuities should be paid, the will authorizing the executors, in their absolute discretion, to dispose of any property of the estate, real or personal, for the payment of debts, expenses, and annuities.

The will further directed the executors to organize " as soon as practicable " the " James Gordon Bennett Memorial Home for New York Journalists " (hereinafter called the home), whose general object should be to furnish pecuniary aid to New York newspaper employees who, because of age, illness, or adverse circumstances should be in need of assistance. To the home to be organized, testator left the residue of his estate, subject to taxes, annuities, and other charges, bequeathing it for the meantime to his executors, Higgins, Wanamaker, and Stillman. The home was organized in 1919, and during the years now before us was an institution exempt from tax under the provisions of section 103, Revenue Act of 1928.

The estate amounted to $5,929,030.44 in the gross, and the debts, specific bequests, state and Federal taxes totaled $2,229,807.24. The executors' account, filed in the Surrogate's Court for the County of New York, shows that by November 30, 1921, they had set aside to the home, *but subject to taxes, annuities, and other charges,* assets of a value of $3,132,810. Later accounts filed by the executors disclose that on March 8, 1928, and April 30, 1930, such assets were of a value of $3,405,505.14 and $3,412,920.31. Upon their books, the executors " earmarked " these assets as a part of the residuary estate and the property of the home. Income, however, was carried in the executors' accounts without designation as to the end for which it might be used. Since the organization of the home, the executors have consulted with its directors concerning investments, disbursements, and other matters bearing on the residuary estate.

Prior to December 30, 1919, the annuities were paid out of corpus of the estate, but since that time they have been paid out of income. Since its organization and through 1930, the executors have paid to the home, for its uses, $220,678.81, of which $25,000 was paid it in 1929, and $23,518.81 in 1930.

In 1929 the executors paid the annuitants $148,403.75, and in 1930, $146,421.88, and upon their returns claimed these amounts as deductions from the estate's income. Of these payments $50,000 was paid in each year to testator's widow. Of the amounts paid in each year to other annuitants respondent has disallowed as deductions $94,500 in 1929 and $92,694.14 in 1930.

We have heretofore considered another question in connection with this estate—see *Ronald de Reuter,* 7 B.T.A. 600, wherein we set

out such portions of the will relating to the annuities and the charitable bequest as are there and here material. That case involved the taxability to the recipients of the annuities. We held that each annuity was a bequest, but not a bequest of income; that the annuities did not constitute taxable income in the hands of beneficiaries; and, further, that each and all of the annuities were charges upon the whole estate. Our decision was affirmed by both the Circuit Court of Appeals for the First Circuit (*Burnet* v. *Whitehouse*, 38 Fed. (2d) 162) and the Supreme Court (283 U.S. 148), the latter saying, through Mr. Justice McReynolds:

> * * * the bequest * * * was not one to be paid from income, but of a sum certain, payable at all events during each year so long as the annuitant should live. * * * The will directed payment without reference to the existence or absence of income. * * * the gift * * * did not depend upon income but was a charge upon the whole estate during the life of the legatee to be satisfied like any ordinary bequest.

In our decision in the *de Reuter* case we said: "We have not before us the question of the extent to which the income of the estate of James Gordon Bennett is taxable and express no opinion on that question." That question is the issue in the case now at bar. Respondent, pointing out that unless the income, less the amounts *paid* to the home, is here taxed, the substantial earnings of this estate will escape taxation, since the annuities are received tax-free, has denied the deduction of the amounts of the annuities paid from income, with the exception of that paid to the widow. Petitioner, reminding us that the purpose of these provisions granting deductions from income was to encourage charity and to permit funds for such uses to pass undiminished by tax, and that to lay a tax on the income of this estate is to reduce the unspent earnings which might increase the residuary estate which will ultimately go to the home, contends that all the earmarked assets and the income annually arising therefrom were permanently set aside for the home and, therefore, these deductions should be allowed.

With petitioner's view we cannot agree. Limiting the purpose to encourage charity is another statutory intendment to levy a tax upon all earnings. In *Helvering* v. *Butterworth*, 290 U.S. 365, where the Supreme Court was dealing with deductions granted under these statutory provisions as applied in connection with payments pursuant to will to trust beneficiaries, the Court said, "the evident general purpose of the statute was to tax in some way the whole income from trust estates," and continued to explain that it was intended that the tax, if not paid by the fiduciary, should be paid by the beneficiary. And in considering the case of *Estate of Calvin Pardee*, 290 U.S. 365, which was another case of the group

disposed of by the cited decision, the Court (affirming 23 B.T.A. 846) denied to the fiduciary the deduction of amounts paid to the beneficiary in discharge of the testator's bequest of an annuity which, clearly, was of the exact nature of the annuities granted under will of the testator in the case now at bar, that is, an annuity payable at all events, whether from income or corpus, and constituting a charge upon the whole estate.

In view of these decisions it is quite evident that petitioner is not entitled to the deductions claimed unless the estate's income was paid or permanently set aside for charitable uses, within the terms of section 162 (a), which, being an exemption provision, must be strictly construed. The plain fact is that the amounts paid to the annuitants were not paid to or set aside for the home or its uses. Amounting to about six times as much in the years before us as the payments to the home, they were paid to the annuitants in discharge of the bequests, which were a charge upon the whole estate. That they were paid out of income, which is the usual procedure if sufficient income is available, did not necessarily conserve nor increase the corpus ultimately to go to the home, for the residuary estate was *subject to taxes, annuities*, and *other charges*. Consequently, the earmarking of the estate's assets as the property of the home upon the executors' books did not make definite the amount which would ultimately be used for charity, nor serve to set aside the income therefrom to charity. While it so happened that in the years here before us the income of the estate was sufficient to pay the annuities and other charges and still permit the application of a part of it to the uses of the home, and that meantime the value of the assets had increased, it cannot be foretold whether that situation will always obtain. There is always the possibility that, because of economic changes or unsuccessful management, the income will diminish, with the result that the annuities will have to be paid in whole or in part from the corpus, as they were during the period immediately following the testator's death, and the residuary estate for charitable uses thus reduced. Clearly, until by complete discharge of all the annuities upon death of the several beneficiaries the estate is freed from the charge laid upon it for their payment, no amount certain, either of corpus or income, can be said to be definitely and permanently set aside exclusively for charitable uses. Meantime, respondent has made no attempt to lay a tax upon those amounts *actually paid* for the uses of the home.

We conclude that respondent did not err in denying the deductions claimed. *Boston Safe Deposit & Trust Co. et al., Executors*, 26 B.T.A. 486; affd., 66 Fed. (2d) 179; *Gertrude Hemler Tracy et al., Trustees*, 30 B.T.A. 1156, and cases there cited.

Respondent erred in allowing the deductions from the income of the estate of $50,000 paid in each year under the bequest to decedent's widow—*Helvering* v. *Butterworth, supra*—but as no claim for an increased deficiency on that account has been made, none can be allowed. Sec. 272 (e), Revenue Act of 1928; *Lucinda Pitman*, 24 B.T.A. 244, reversed on another issue, 64 Fed. (2d) 740; *Davison* v. *Commissioner*, 60 Fed. (2d) 50, 52.

*Judgment will be entered for the respondent.*